399 So.2d 737 (1981)
Earl J. ROY and Cynthia Marie Roy, Plaintiffs-Appellees,
v.
Adam DUCOTE, Jr., et al., Defendants-Appellants.
No. 8073.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
*738 Cliffe E. LaBorde of LaBorde & Lafargue, Marksville, for defendants-appellants.
Rivers & Willson, Thomas R. Willson, Alexandria, for plaintiffs-appellees.
Before GUIDRY, FORET and CUTRER, JJ.
GUIDRY, Judge.
Plaintiffs, Earl and Cynthia Roy, instituted this suit against defendants, Adam Ducote, et al., seeking a declaratory judgment decreeing that a building restriction affecting properties owned by them is unconstitutional and therefore void and unenforceable. The parties stipulated to the facts and submitted the matter to the trial court for decision. The trial court rendered judgment in favor of plaintiffs declaring the building restriction unconstitutional in that it denies equal protection of the law to those persons who are financially unable to obtain home financing other than via the Farmers Home Administration interest credit loan or the Federal Housing Authority 235 "I" of "HUD" program. In addition, the trial judge declared that the subject restriction was "contra bonos mores and against public policy". The trial court ordered the restriction stricken from the public records of Avoyelles Parish. Defendants appeal.
The facts as stipulated reflect that plaintiffs own 31 of 35 lots in the subdivision known as the Earl Roy Glen Monte Subdivision located near Hessmer in Avoyelles Parish, Louisiana.
Defendants own two lots in the same subdivision.[1] The dispute between the parties concerns a building restriction applicable to the subject lots which provides that:
"FINANCING:
No dwelling shall be constructed which is financed by a Farmers' Home Administration interest credit loan, or by the Federal Housing Authority 235 "I" of "HUD" programs. This restriction shall not apply to any other loan programs for such dwellings administered by the above mentioned agencies."
Plaintiffs purchased their lots in the Earl Roy Glen Monte Subdivision (formerly known as Rocky AcresEstate of Hessmer, Inc. and Glen Monte Subdivision) subject to the restrictive covenant in dispute. Plaintiffs urge that the subject building restriction is unconstitutional since it discriminates against low income persons and denies such persons equal protection of the laws. In addition, plaintiffs contend that the building restriction adversely affects the marketability of their property since it effectively eliminates persons of low income from purchasing plaintiffs' property, thereby, severely restricting their Federal and State constitutional rights to use, enjoy, and dispose of their private property.
To understand the impact of the restrictive covenant in dispute, it is necessary to examine the background and purpose of those loan programs which the covenant seeks to prohibit from financing Homebuilding in the subject subdivision. The United *739 States Congress in enacting the Housing and Urban Development Act of 1968 affirmed the national goal as set forth in 42 U.S.C.A. § 1441 of "a decent home and a suitable living environment for every American family." 12 U.S.C.A. § 1701t. Cognizant that many families have such limited incomes as to preclude the achievement of this goal, Congress established several programs to aid such families in acquiring suitable housing. Section 235 of the aforementioned Act is aimed at assisting lower income families in acquiring homeownership by subsidizing construction of single family units for their purchase. See 12 U.S.C.A. § 1715z. For a homeowner to qualify for the assistance payments under Section 235, the homeowner must meet the eligibility requirements set out by the Secretary of Housing and Urban Development, be of low income, and be a mortgagor under a mortgage in compliance with Section 235. See 12 U.S.C.A. § 1715z(b). At the time of its enactment, Section 235 was meant to assist low income families particularly those in the $3,000.00 to $7,000 annual income range. Commonwealth of Pennsylvania v. Lynn, 501 F.2d 848 (C.A.D.C.1974).
Under the Farmers Home Administration interest credit loan program, the Secretary of Agriculture is authorized to make loans to moderate and low income families for the acquisition of rural housing. See 42 U.S.C.A. § 1471 et seq. Under 42 U.S.C.A. § 1471(b)(4), a low income family is one whose income does not exceed eighty per cent (80%) of the median income for the area as determined by the Secretary. Of the loans made, sixty per cent (60%) must benefit persons of low income. 42 U.S.C.A. § 1487 (o)(1).
Defendants contend that the plaintiffs do not have standing to challenge the constitutionality of the restrictive covenant in dispute. We observe that defendants raise this issue for the first time on appeal in brief only. Objections to the right of a party to institute suit is properly raised via a peremptory exception of no right of action which may be pleaded at any stage of the proceedings in the trial court prior to submission of the case for a decision and may be noticed either by the trial court or appellate court on its own motion. See LSA-C.C.P. Articles 927 and 928. In addition, LSA-C.C.P. Article 2163 provides:
"The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception."
The issue of standing has not been properly presented to this court since defendants have not filed a peremptory exception of no right of action prior to submission of the case for a decision. We are aware that an appellate court may recognize the lack of legal interest of the plaintiff on its own motion, however, this authority is exercised sparingly. This authority should not be exercised except in cases where the record on its face clearly shows a lack of interest on the part of the plaintiff to institute suit. The instant case does not fall within this category, therefore, we decline to consider the issue of standing.
The restrictive covenant in dispute prohibits the construction of homes which are financed via the two aforementioned federal loan programs. We observe that it does not exclude the construction of homes financed by other federal loan programs. In support of the restrictive covenant's validity, defendants contend that the purpose of the subject restriction is to "form a neighborhood that does not look like a `government program' and to create a quiet, peaceful neighborhood with attractive surroundings and minimal amounts of noise and extraneous intrusions". However, we fail to discern how the contested restrictive covenant will accomplish its avowed purpose. It seems clear to us that the only purpose of the disputed restrictive covenant is to exclude low income persons from the Earl Roy Glen Monte Subdivision by disallowing *740 the primary mode of home financing available to such persons. As such it cannot stand.[2]
Defendants urge that the building restriction in dispute is not subject to scrutiny under the equal protection provisions of either the federal or state constitution. We disagree. The Fourteenth Amendment to the United States Constitution forbids any state to deny the equal protection of the law to any person within its jurisdiction.[3] By its terms, the Equal Protection Clause requires a finding of "state action" before the courts can subject the contested matter to scrutiny on equal protection grounds. In the instant suit, we note that the contested building restriction was recorded in Avoyelles Parish by the Avoyelles Parish Clerk of Court. This recordation functions to provide notice to third parties. In Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), the United States Supreme Court concluded that the action of state courts and of judicial officers in their official capacities even though taken for the enforcement of private agreements, is state action within the meaning of the Equal Protection Clause of the U. S. Constitution. In Mayers v. Ridley, 465 F.2d 630 (C.A.D.C.1972), the court found that the action of the Recorder of Deeds for the District of Columbia in recording racially restrictive covenants is "state action" for equal protection purposes. The court noted in its opinion that:

"Fortunately, it is unnecessary to mediate this scholarly dispute, since this is not a close case. Whatever the vagaries of `state action' at the margin, the core concepts remain clear. When the state acts directly and unambiguously in a discriminatory manner, it violates the basic command of the Fourteenth Amendment. Cf. Commonwealth of Pennsylvania v. Brown, 3 Cir., 392 F.2d 120, 125, cert. denied, 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657 (1968). We are not dealing here with a case where tangential state involvement is used to implicate otherwise private activity with `state action.' See, e. g., Burton v. Wilmington Parking Authority [365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45], supra; Simkins v. Moses H. Cone Memorial Hospital, 4 Cir., 323 F.2d 959 (1963); Green v. Kennedy, D.D.C., 309 F.Supp. 1127, appeal dismissed, sub nom. Cannon v. Green, 398 U.S. 956, 90 S.Ct. 2169, 26 L.Ed.2d 539 (1970). Cf. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172-177, 92 S.Ct. 1965, 1971-1974, 32 L.Ed.2d 627 (1972). Nor is it even a situation in which a facially neutral government statute or policy has the effect in certain situations of denying racial justice. See Hunter v. Erickson [393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616], supra; Reitman v. Mulkey [387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830], supra. The Recorder of Deeds is a state official, and the activities of the Recorder's office are a state responsibility. The Recorder has made a policy decision to consider illegal, racist covenants as documents `affecting the title or ownership of real estate'. See 45 D.C. Code § 701(a)(1). If the concept of `state action' has any meaning at all, then that decision is a state decision for which the state is fully responsible."

In the present case, the Avoyelles Parish Clerk of Court has recorded a restrictive *741 covenant which discriminates against persons of low income. The Clerk's action in recording the subject building restriction constitutes "state action" for the purposes of constitutional scrutiny.
Accordingly, this court must determine if the building restriction at issue discriminates against an identifiable class in an invidious manner. The identifiable class in this instance is composed of those low income persons eligible to receive federal financing through the two aforesaid federal loan programs available to low income persons for home construction. In essence, these persons are discriminated against on the basis of their economic status. To determine whether an equal protection claim exists involves a balancing of a legitimate governmental purpose against the discriminatory effect of state action. Where the discrimination is based upon economic status, strict scrutiny of such balance is required. In Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), the Court noted that lines drawn on the basis of wealth or property, like those of race, are traditionally disfavored. Therefore, it must be shown that there is a compelling state interest served by such a classification for it to stand. See Harper, supra; Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), (concurring opinion by Douglas, J.). The only purpose for the discriminatory restrictive covenant articulated by defendants is their desire to "form a neighborhood that does not look like a `government program' and to create a quiet, peaceful neighborhood with attractive surroundings and minimal amounts of noise and extraneous intrusions". We conclude that such an interest is not so compelling as to justify invidious discrimination against persons of low income. As previously stated, the purported intent of the disputed covenant can be accomplished by means other than the enforcement of the contested building restriction. To introduce "method of financing" as a basis for building a home in a particular location is an arbitrary, capricious, and irrelevant factor. Thus, under the present circumstances, this court concludes that the building restriction at issue, if enforced, would result in invidious discrimination against an identifiable class, specifically persons of low income, and therefore, runs afoul of the federal and state guarantees of equal protection of the laws.
In addition, this court observes that many of the low income persons affected by the subject building restriction will be members of racial minorities. Thus, the practical effect of the implementation of the restrictive covenant will be to exclude members of racial minorities from constructing homes in the Earl Roy Glen Monte Subdivision. Although the covenant by its language does not discriminate against persons on the basis of race, it cannot be ignored that in operation it will accomplish that end. It is well settled that racially restrictive covenants are unenforceable. Shelley v. Kraemer, supra; Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); see also, the Fair Housing Act of 1968, 42 U.S.C.A. § 3604.
Plaintiffs in brief assert that the subject building restriction infringes upon their constitutional rights to acquire, enjoy, and dispose of their private property. In addition, plaintiffs contend that the restrictive covenant violates the public policy against the perpetual and total inalienability of property since the building restriction is allegedly binding on all persons for a period of fifty years from the date of recordation. This court is not required to address these issues as we have previously concluded that the building restriction at issue is violative of federal and state guarantees of equal protection of the laws and as such, cannot stand.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are assessed to the defendants.
AFFIRMED.
NOTES
[1] The owners of the remaining lots in the Earl Roy Glen Monte Subdivision were made parties defendant however such parties failed to answer and a preliminary default judgment was entered against them on April 25, 1980. The record does not reflect confirmation of this preliminary default judgment.
[2] We observe that plaintiffs' counsel in brief and the trial judge in his written reasons for judgment refer to additional building restrictions applicable to the subject property which allegedly dictate both minimum size and minimum appraised value for homes constructed in the Earl Roy Glen Monte Subdivision, however, such restrictions are not a part of the record filed with this court. In addition, we note that defendant's counsel in brief admits that the prohibited federal loan programs are able to provide financing sufficient to construct homes in compliance with those restrictions relative to size and appraised value minimums.
[3] LSA-Const. Art. I Sec. 3 provides:

"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."