691 So.2d 142 (1997)
The COUNTRY CLUB OF LOUISIANA PROPERTY OWNERS ASSOCIATION, INC.
v.
Russell L. DORNIER.
No. 96 CA 0898.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*143 Randy Roussel, Baton Rouge, for plaintiff/appellant, Country Club of Louisiana Property Owners Association, Inc.
Russell Dornier, Baton Rouge, Defendant/appellee, in pro. per.
*144 Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
WHIPPLE, Judge.
Plaintiff appeals from an order of the trial court, denying its request for a preliminary injunction.[1] For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiff, The Country Club of Louisiana Property Owners Association, Inc. ("the Association"), filed a petition for a preliminary and permanent injunction against defendant, Russell Dornier, the owner of Lot 3, Parcel 14 of The Country Club of Louisiana subdivision, seeking to enjoin Dornier's alleged violation of the restrictive covenants affecting the subdivision.
The restriction at issue is article X, section 10.12 ("section 10.12"), of the "Declaration of Covenants, Conditions and Restrictions" which provides as follows:
10.12 Signs. Except as may be required by legal proceedings, no signs or advertising posters of any kind shall be maintained or permitted within any windows, on any Lot, the exterior of any improvements located within the Development, or elsewhere on any portion of the Property, without the express written permission of the Architectural Review Committee. The approval of any signs and posters, including, without limitation, name and address signs, shall be upon such written conditions, standards, and guidelines as may be from time to time promulgated by the Architectural Review Committee. Notwithstanding the foregoing, the restrictions of this Section 10.12 shall not apply to Declarant. In addition, the Board of Directors, on behalf of the Association, shall have the right to erect reasonable and appropriate signs on any portion of the Common Areas and within those servitude areas established in Section 3.08 hereof. No real estate signs shall be permitted anywhere within the Property except those provided by the Association. (Emphasis added).
In late September, 1995, Dornier erected a sign on his lot within the subdivision, advertising that his home was for sale by owner. The sign he erected was the sign he had purchased through the Association when he originally constructed the home. Each property owner was required to purchase a sign through the Association prior to construction of a home, and the sign was used for the posting of permits and information as to the architect, contractor and any interior designer. For homes built on speculation, the signs were also used to advertise the home for sale. Dornier simply removed certain temporary attachments that were placed on the sign during the original construction phase of his home and placed the wording "For Sale By Owner" on the sign along with a phone number.
Thereafter, Dornier received a letter dated October 9, 1995 from the administrator of the Association, requesting that Dornier remove the sign on the stated basis that no signs advertising a home for sale are allowed to be erected by homeowners in the subdivision. Dornier took the position that this was a sign authorized by the Association and that his placement of the sign on his lot was not a violation of the restrictive covenants. Dornier, therefore, refused to remove the sign, and this suit followed.
At the hearing for the issuance of a preliminary injunction, the parties stipulated that Dornier had never requested permission to re-erect his sign, but that even if he had requested permission to erect the sign, permission would not have been granted by the Architectural Review Committee.
Patricia Jeter, administrator for the Association, testified regarding placement of signs in the subdivision. Jeter stated that in keeping *145 with the general plan of development dealing with the aesthetics and beauty of the neighborhood, no homeowner is allowed to display a sign advertising that the home is available for sale. In fact, no signs with any political or commercial statement are allowed to be displayed by homeowners. Decorative holiday signs, such as Halloween and Christmas signs, are permitted.
Jeter explained that during the construction phase of a home, the Association requires the property owner to purchase a "construction sign" to be placed on the property, and all of these signs are uniform in appearance. The sign lists the owner, builder, architect and subcontractors, and the main reason for requiring the sign is to assist subcontractors and other construction site workers in locating the home within the subdivision. Jeter further testified that the sign remains on the property for the duration of the construction process and is removed immediately upon occupancy.
Jeter acknowledged that some of these "construction signs" advertise the home for sale. She explained that if the home is built on speculation, the owner is allowed to advertise the home for sale on the sign. Moreover, the owner is allowed to continue to display the "construction sign" advertising the home for sale even after construction has been completed if the home has not been sold by that point. However, once the home has been sold and is occupied, the sign must be removed, and the Association does not allow the homeowner to erect a "For Sale" sign in the yard after the home has been occupied, regardless of whether the home is vacant at the time.
When questioned about the last sentence of section 10.12 of the restrictive covenants, providing that no real estate signs shall be permitted anywhere within the Property except those provided by the Association, Jeter acknowledged that this language in the restrictive covenant seemingly anticipates that real estate signs will be permitted if provided by the Association and approved by the Architectural Review Committee. However, she stated that the Association has never allowed any type of real estate sign and that as of that time, the Architectural Review Committee was not allowing any real estate signs.
William Culbertson, president of the Association, similarly testified that the "construction sign" must be removed after initial occupancy and can never be re-erected on the property for the purpose of advertising the home for sale. With regard to the last sentence of section 10.12 of the restrictive covenants, Culbertson explained that homeowners are permitted to have open houses when their homes are for sale, and the Association will provide them with "Open House" signs. However, no "For Sale" signs are permitted.
When questioned by the court as to how this occupancy benchmark for the removal of signs furthers the total plan of development of the subdivision, Culbertson responded that "[i]t's one less sign out there in a development which we hope ultimately will have no signs out there.... We're only halfway there, but it is an orderly plan through with all signage will be removed, and this is a part of i[t]."
In opposition to the request for a preliminary injunction, Dornier introduced photographs of thirty-five of these "construction signs," including his own, which were located throughout the subdivision at the time of the hearing. The photographs demonstrate that all of the signs are of like design and that many list the homes for sale. However, none of the homes displaying a sign, except for Dornier's, has ever been occupied.
At the conclusion of the hearing, the trial court rendered judgment, denying the Association's request for a preliminary injunction. The trial court found that it was not reasonable to permit builders to place a sign advertising the home for sale identical to the one the homeowner attempted to display, while denying the homeowner that right and that the Association had failed to demonstrate how the total plan or order of development was benefited by the Association's rule regarding occupancy of the home as the benchmark for elimination of "For Sale" signs. By order dated December 28, 1995, the trial court denied the Association's request for a preliminary injunction.
*146 From this order, the Association appeals, assigning the following as error:
(1) The trial court erred in concluding that the Association's request for an injunction turned on issues of constitutional law, specifically the due process, equal protection and commerce clauses of the United States or Louisiana constitutions;
(2) The trial court erred in determining that enforcement of section 10.12 of the restrictive covenants was subject to a reasonableness test, because the restrictive covenants were not only filed in the public record, but were also incorporated into the act of sale at issue;
(3) If this court determines that enforcement of section 10.12 of the restrictive covenants is subject to a reasonableness test, the trial court erred in determining that it was not reasonable and that occupancy was not a reasonable benchmark for the elimination of "For Sale" signs;
(4) The trial court erred in ruling that the Association had failed to prove that Dornier violated section 10.12 of the restrictive covenants when he erected and failed to remove the "For Sale" sign after he had occupied the dwelling;
(5) The trial court erred in including within its judgment certain enumerated factual findings and legal conclusions that should have instead been included in written reasons for judgment and only if written reasons were properly requested by the litigants; and
(6) The trial court erred in refusing to award costs and attorney's fees to the Association.

APPLICABILITY OF CONSTITUTIONAL PRINCIPLES

(Assignment of Error Number 1)
In its first assignment of error, the Association contends that the trial court erred in ruling that section 10.12 violated Dornier's constitutional rights of due process and equal protection. The Association argues that no constitutional analysis was required because it is not a state actor and that this court should not give any deference to the trial court's factual findings inasmuch as those findings were tainted by the trial court's erroneous determination that this matter turned upon constitutional issues.
The Association correctly notes that the restrictions imposed by the due process clauses of the Louisiana and United States Constitution apply only to state action and not private action. Vangraff, Inc. v. McCearley, 314 So.2d 483, 484-485 (La.App. 1st Cir.), writs denied, 318 So.2d 51, 320 So.2d 549 (La.1975). Additionally, a finding of a violation of equal protection first requires a finding of "state action" allegedly infringing upon these freedoms. See Shelley v. Kraemer, 334 U.S. 1, 20, 68 S.Ct. 836, 845, 92 L.Ed. 1161 (1948). Thus, in the absence of state action, no constitutional analysis is required.
However, we note that in Roy v. Ducote, 399 So.2d 737, 740 (La.App. 3rd Cir.1981), the Third Circuit Court of Appeal held that the recordation of contested building restrictions by the Avoyelles Parish Clerk of Court constituted "state action" for purposes of equal protection analysis. In making this determination, the Third Circuit relied upon Shelley v. Kraemer, wherein the United States Supreme Court concluded that the action of state courts and of judicial officers in their official capacities, even though taken for the enforcement of private agreements, is "state action" within the meaning of the Equal Protection Clause of the United States Constitution. Shelley, 334 U.S. at 20, 68 S.Ct. at 845.
The "state action" in Shelley was the judicial enforcement of restrictive covenants, which had as their purpose the exclusion of persons of a certain race or color from owning property covered by the restrictive covenants. Shelley, 334 U.S. at 4-7, 68 S.Ct. at 838-839.
Thus, an argument could be advanced that any action by the trial court in granting the requested preliminary or permanent injunction, even though taken for the enforcement of a private agreement, would constitute the requisite "state action" for purposes of constitutional analysis. See also Citizens *147 Against Government Takeover v. Giarrusso, 490 So.2d 510, 511 (La.App. 4th Cir.1986) (judgment of constructive contempt by the trial court constituted "state action" and was an abridgment of the right of free speech). However, we need not determine this issue inasmuch as the trial court's ruling is supported on other grounds. See Cashio v. Shoriak, 481 So.2d 1013,1017 (La.1986).
While the trial court throughout the hearing and in oral reasons for judgment made some reference to constitutional issues, it is clear from its reasons for judgment that the trial court found as a matter of fact that the interpretation of the restrictive covenant utilized by the Association and the Architectural Review Committee to prohibit certain signs was not a reasonable interpretation or a good faith application of the terms of the restrictive covenant. Thus, the trial court's ruling will be reviewed on this basis, and its findings of fact in this regard will appropriately be reviewed under the manifest error standard of review.
This assignment of error is without merit.

REASONABLENESS OF APPLICATION OF RESTRICTIVE COVENANT

(Assignments of Error Numbers 2, 3 and 4)
In its second assignment of error, the Association contends that the trial court erroneously concluded that the enforcement of section 10.12 of the restrictive covenants was subject to a reasonableness test, where the restrictions were duly recorded and incorporated into the act of sale of Dornier's property and the object of the restrictive covenants was "lawful, possible, and determined or determinable" in accordance with LSA-C.C. art.1971.
Building restrictions constitute real rights, not personal to the vendor, and inure to the benefit of all other grantees under a general plan of development. They are real rights running with the land. LSA-C.C. arts. 775, 777; Cashio, 481 So.2d at 1015.
Restrictive covenants are to be strictly construed, with any doubt resolved in favor of unrestricted property use. Mariner's Village Master Association, Inc. v. Continental Properties, 93-1530, p. 7 (La. App. 1st Cir. 5/20/94), 639 So.2d 1188, 1192. Apart from the rule of strict interpretation, documents establishing building restrictions are subject to interpretation and enforcement as are contracts. Mariner's Village Master Association, Inc., 93-1530 at p. 7, 639 So.2d at 1192. However, where the restrictive covenant sought to be enforced grants unlimited authority to a committee or association to enforce the covenant without setting forth guidelines or standards, the party seeking to enjoin an alleged violation of the restrictive covenant must prove that the authority granted was exercised reasonably and in good faith. Oakbrook Civic Association, Inc. v. Sonnier, 481 So.2d 1008, 1012 (La. 1986); 4626 Corporation v. Merriam, 329 So.2d 885, 888-889 (La.App. 1st Cir.), writ refused, 332 So.2d 800 (La.1976).
Section 10.12 provides that no signs will be permitted "without the express written permission of the Architectural Review Committee" and that only real estate signs provided by the Association shall be permitted. Contrary to the contentions of the Association, the language of the restrictive covenant at issue does not clearly prohibit Dornier from displaying the sign advertising his home for sale by owner. Rather, it is the Association's and the Architectural Review Committee's interpretation and application of this restriction which prevents a homeowner from displaying a "For Sale" sign after initial occupancy, with no guidelines or standards set forth in the restrictive covenant for its enforcement. Thus, the Association's and Committee's enforcement of this restriction must be judged by the reasonableness of their actions, and the trial court applied the appropriate test when it judged the Association's actions under a "reasonableness" standard. The Association's second assignment of error also lacks merit.
In its third and fourth assignments of error, the Association contends that the trial court erred in its ultimate determination that the Association's enforcement of section 10.12 *148 was not reasonable and in its finding that Dornier had not violated section 10.12.
In concluding that the Association's enforcement of section 10.12 of the restrictive covenants was not reasonable, the trial court made several factual determinations. The trial court ultimately concluded that the Association had failed to prove that the "occupancy" benchmark for elimination of "For Sale" signs, which had the effect of preventing homeowners whose homes had been occupied from advertising their homes for sale in the same manner as a builder of an unoccupied home could advertise, benefited the total plan or order of development of the subdivision.
In reviewing the trial court's conclusions, we turn first to the language of the restrictive covenant itself. Section 10.12 requires written permission of the Architectural Review Committee for any signs to be displayed. It further provides that the approval of any signs shall be upon written conditions, standards and guidelines as may be promulgated "from time to time" by the Architectural Review Committee. Finally, it appears to authorize the use of real estate signs if "provided by the Association." Thus, an individual purchasing property subject to these restrictive covenants could reasonably interpret this particular section as allowing the use of signs to advertise the property for sale upon obtaining requisite approval. However, the testimony presented at the hearing demonstrates that no guidelines for approval of signs have ever been published, and as of the time of the hearing, the Architectural Review Committee was simply not allowing any real estate signs to advertise a previously occupied home as being for sale (except for the "Open House" signs provided or sold by the Association).
Moreover, while the Association attempted to justify its decision to classify the signs on new construction as "construction signs," used primarily to assist construction workers in locating the job site and for posting of permits, it is clear from the record that these signs were also used as a means of advertising new homes for sale. In fact, one of the signs advertising a home for sale, as depicted in the photographs introduced by Dornier, had been in place for at least ten months after construction had been completed. Jeter, administrator of the Association, admitted, upon questioning by the court, that after construction was complete, there was no longer any need for any construction workers to locate the house. Thus, the stated purpose of the "construction sign" was no longer being served.
The record shows that at least thirty-four signs were displayed in the subdivision at the time of the hearing, all of which were substantially similar to Dornier's. All of these signs, including Dornier's, were purchased through the Association. Dornier's sign was the approved sign for the subdivision when he purchased it upon construction of his home, and, importantly, the same style sign is still the authorized sign in the neighborhood.
As noted by trial court, this benchmark of occupancy gives a speculative builder or his real estate agent an advantage over a homeowner attempting to market his previously occupied home. In fact, other than board members of the Association, the complaints that Jeter testified were received concerning the sign posted by Dornier were from two real estate agents who list property for sale within the subdivision.
Moreover, regarding the Association's argument that restricted access to the subdivision renders Dornier's sign practically useless, the record demonstrates that once an individual obtains access to the subdivision, which could be for the purpose of viewing one particular home for sale, the individual then has unlimited access to subdivision. Thus, the individual could drive through the entire subdivision to view other homes for sale.
Considering the foregoing, we find no error in the trial court's conclusion that the Association's and Architectural Review Committee's interpretation and enforcement of section 10.12 of the restrictive covenants to deny homeowners the right to erect approved "For Sale" signs for previously occupied homes was unreasonable. Because the Association failed to establish that the Architectural Review Committee was exercising *149 the authority granted to it by section 10.12 in a reasonable manner, it was not entitled to a preliminary injunction in this matter. See Oakbrook Civic Association, Inc., 481 So.2d at 1012. Assignments of error three and four are also without merit.[2]

REASONS INCORPORATED INTO JUDGMENT

(Assignment of Error Number 5)
In its fifth assignment of error, the Association contends that the trial court erred in including enumerated findings of fact in its judgment and requests that this court strike the present judgment and remand this matter for entry of a judgment void of reasons.
Louisiana Code of Civil Procedure article 1918 provides as follows:
A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment.
However, our supreme court has held that the language of the second sentence of this article is merely precatory and does not render a judgment, identified as such and complete in every respect, invalid merely because it contains surplus language. Hinchman v. International Brotherhood of Electrical Workers, Local Union # 130, 292 So.2d 717, 720 (La.1974). Thus, we see no need to remand this matter for entry of a new judgment.[3]
This assignment of error lacks merit.

COSTS AND ATTORNEY'S FEES

(Assignment of Error Number 6)
In its final assignment of error, the Association contends that the trial court erred in failing to award attorney's fees and costs, and requests that an award be made pursuant to article XII, section 12.04 of the restrictive covenants, which provides, in pertinent part, as follows:
Should Declarant or the Association employ legal counsel to enforce any of the foregoing, all costs incurred in such enforcement, including court costs and reasonable attorneys' fees, shall be paid by the violating Owner.
Inasmuch as we have affirmed the trial court's finding that the Association did not act reasonably in its enforcement of section 10.12 and the denial of the preliminary injunction sought by the Association, we decline to award costs or attorney's fees in its favor. This assignment of error also lacks merit.

CONCLUSION
For the above and foregoing reasons, the December 28, 1995 order of the trial court, denying the Association's request for a preliminary injunction, is affirmed. Costs of this appeal are assessed against The Country Club of Louisiana Property Owners Association, Inc.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring.
I concur in the result only. The sole issue here is whether this property owner, Mr. Russell Dornier, can place a "for sale" sign on one of two homes that he developed. One of these homes had been occupied by him for a period of time. This occupancy ceased when Mr. Dornier moved into the second home that he had built. Mr. Dornier then placed one of his two homes for sale. He placed the same type of sign that had been issued by the association to speculators on his property.
*150 The placement of a sign on an individual's property does not rise to the level of due process. This case simply involves a battle between a homeowner/developer and the homeowner's association. Restrictive covenants may impose affirmative duties on a landowner if they are reasonable and necessary for maintenance of the general plan governing building standards, specified uses, and improvements. La. C.C. arts. 775 and 778. Covenants requiring consent are valid and enforceable, even though they vest the approving authority with vast discretionary powers, "... provided that the authority is exercised reasonably and in good faith." Oakbrook Civic Association, Inc. v. Sonnier, 481 So.2d 1008,1012 (La.1986).
In the facts at hand, the association's reliance on the benchmark "occupancy" is not contained in the restrictive covenants that govern the subdivision. The power of the architectural review committee in implementing standards in conformity with the general plan is, therefore, not limited by direct regulations. In the absence of precise guidelines or standards to be enforced by the architectural review committee, reasonableness of its actions becomes the controlling criterion. See id., 4626 Corporation v. Merriam, 329 So.2d 885, 889 (La.App. 1st Cir.), writ refused, 332 So.2d 800 (La.1976).
While the issue of controlling the proliferation of signs in an "exclusive" subdivision is a reasonable goal, the latent selection of "occupancy" as a "cut-off" is unfair in its application. Distinguishing between two classes of "occupants"; namely, homeowners and developers, is not reasonable, given the specific facts presented. The selection of prior occupancy as the basis for denial of the right to post one of the association's approved signs does not sufficiently conform to the association's stated goal of eliminating "for sale" signs completely. It can not be arbitrarily applied to Mr. Dornier. By treating developers as a special class, the association has abused its discretion in arbitrarily applying rule 10.12 of the covenants and restrictions.
NOTES
[1] Louisiana Code of Civil Procedure article 3612 provides, in pertinent part, that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." (Emphasis added). The right of appeal granted by this article is not restricted to judgments which grant injunctive relief. Rather, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. State ex rel. Guste v. City of New Orleans, 363 So.2d 678, 680 (La.1978); Fabacher v. Hammond Dairy Company, Inc., 389 So.2d 87, 89 (La.App. 4th Cir.1980).
[2] With regard to Dornier's failure to obtain prior written approval before re-erecting the sign at issue, we note that the Association stipulated that such approval would not have been granted. The law will not require an individual to perform a vain and useless act. See 4626 Corporation, 329 So.2d at 889-890.
[3] We note that in Madison Street Grocery v. City of Shreveport, 25,532, p. 2 (La.App. 2nd Cir. 2/23/94), 632 So.2d 865, 866, the Second Circuit Court of Appeal ordered that the trial court's expressed reasons, which had been incorporated into the judgment, be deleted, finding that the language at issue was "superfluous to the denial of relief." However, we find that the instant case is distinguishable and decline to follow the Second Circuit's approach in Madison Street Grocery.