11DOWNING, J.,
concurring.
I concur with the majority opinion on the off chance that the Louisiana State Employees’ Retirement System (LA *458 SERS) can suggest at the trial court a reasonable and legal method for receiving and considering Ms. Dobrowolski’s supplemental evidence, including the deposition testimony of her treating physician, Dr. Jed Morris. Otherwise, I would affirm the judgment of the trial court.
Louisiana Revised Statutes 49:964E does provide that “the court may order that the additional evidence be taken before the agency upon conditions determined by the court.” The statutory framework for LASERS’ decision-making under La. R.S. 11:218, however, does not appear to allow the introduction of Ms. Dobrowolski’s evidence, which I agree is material. No board or hearing procedure is statutorily authorized. We certainly cannot jurisprudentially grant judicial power and functions (deciding the law and fact-finding) to the evaluating physicians, who in this instance are charged statutorily with rendering medical opinions.
Even so, it appears from the record that the trial court did not explore whether any legal and practical means existed by which it could remand the matter back to LASERS for consideration before it decided to accept and consider the evidence on its own. If no such legal or practical means exists, | {¡LASERS should stipulate to the admissibility of Ms. Dobrowolski’s evidence or supplement the record with the evidence and return the record to the trial court. The law does not require the performance of vain and useless acts. See Country Club of Louisiana Property Owners Association, Inc. v. Dornier, 96-0898, p. 13 n. 2 (La.App. 1 Cir. 2/14/97), 691 So.2d 142, 149 n. 2.
I agree for reasons stated by the majority that Ms. Dobrowolski’s evidence is material and that the trial court serves as factfinder on administrative review. I also believe the trial court was correct in crediting the testimony of Ms. Dobrowolski’s treating physician, Dr. Jed Morris, who had been treating Ms. Dobrowolski long term and was intimately familiar with her condition and prognosis.
Dr. Morris testified that Ms. Dobrowol-ski had symptoms and findings of several disorders including degenerative disc disease, chronic fatigue syndrome, inflammatory arthritis, and fibromyalgia. He testified that it would be hard to pigeonhole her problems into one disorder. He noted that his use of the term “fibromyalgia” was descriptive just to place her illness in some general category. He testified that the tender points used in diagnosing fibro-myalgia may be present or absent on certain days. He explained that Ms. Dobro-wolski has never had a full-blown, classical case of fibromyalgia — that her symptoms fall into “a realm of evolving or undifferentiated connective tissue disease.”
Dr. Morris further testified that when examining a “complex rheumatological patient,” he did not think “on many occasions” one evaluation would be adequate to tell “exactly what’s going on.” Though he did state that some well defined disorders could be easily diagnosed on one visit and examination.
|3Pr. Morris stated that he had treated Ms. Dobrowolski for eight years and found her to be highly intelligent and well motivated. He said that her “compendium of symptoms of findings are consistent” and could not be made up. His diagnosis is that she is systemically ill and shows evidence of degeneration in her cervical spine, overwhelming fatigue and inflammatory polyarthroscopy. He noted that her condition had been deteriorating over the last eight months and that there have been “recent ominous findings” that she may become more ill.
Regarding Ms. Dobrowolski’s ability to work, Dr. Morris testified: “She presents *459 as someone who is systemicaUy ill and who basically is not capable of rectifying ... her clinical status to the point that she can pursue meaningful work like the average person.” He said that perhaps she could perform her job functions for a few days but that she was not qualified to do what she was trained for because of weakness, fatigue, a sense of being overwhelmed and depression. Dr. Morris’s medical opinion based on his examinations, the years of treatment, and the tests run over the years was that Ms. Dobrowolski was totally disabled from the further performance of her normal duties and that the incapacity was likely to be permanent.
Regarding rehabilitation, he testified: “I think that somebody who has depression, inflamed joints and overwhelming fatigue is not a very rehabilitatable person, and who appears to be getting worse.”
Regarding the opinions of LASERS’ evaluating physicians, Dr. Morris testified that in a case like Ms. Dobrowolski’s, he disagreed “totally and firmly” that Ms. Dobrowolski could be diagnosed able to work in one examination. He analyzed the LASERS’ physicians’ problems with diagnosis as follows: “they had a lot of trouble with coming to total grips to what the problem was, and the reason they did was, is they were seeing her |4on one occasion and they didn’t see her during periods of disease activity, and they certainly haven’t seen her since that time when unbe-nounced (sic) to them she’s developed inflammatory arthritis. I mean that would certainly turn their heads.”
Accordingly, while I agree with the remand of this matter to the trial court to explore legal means for LASERS to accept and consider Ms. Dobrowolski’s evidence, I would otherwise affirm the trial court’s decision that by the preponderance of the evidence, Ms. Dobrowolski was totally and permanently disabled and entitled to disability benefits.