# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
April 23, 2014 Session

## AVALON SECTIONS 4, 6 AND 7 HOMEOWNERS ASSOCIATION v. DILIP CHAUDHURI, ET AL.

**Appeal from the Chancery Court for Williamson County**
No. 41820     Robbie T. Beal, Chancellor

No. M2013-02346-COA-R3-CV - **Filed June 26, 2014**

Homeowners association brought declaratory judgment action against homeowners to enforce the development's restrictive covenants. The trial court determined that the homeowners association's architectural review committee ("ARC") acted within its discretion in ordering homeowners to remove improvements the ARC found to be inconsistent with other homes in the neighborhood. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., and J. MARK ROGERS, SP. J., joined.

Joseph H. Johnston, Acklen Station, Tennessee, for the appellants, Dilip Chaudhuri, et al.

Craig H. Brent, Franklin, Tennessee, for the appellee, Avalon Sections 4, 6, and 7 Homeowners Association.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Dilip and Kanika Chaudhuri ("Homeowners") bought a house on lot 429 in Avalon P.U.D. Subdivision, Section 7. It is undisputed that this subdivision is subject to the recorded Amended and Restated Declaration of Protective Covenants, Conditions, and Restrictions ("the Declaration") referenced in the deed to Homeowners' property. (The contents of the Declaration will be outlined below as relevant to the issues on appeal.) Homeowners took

possession of their new home on October 31, 2007. At some time shortly before or after this date,[1] Homeowners hired someone to install in the front yard a flowerbed surrounded by scalloped border blocks. Homeowners did not seek approval of this landscaping prior to installing the flower bed, as required by the Declaration.

Pursuant to the Declaration, the Architectural Review Committee ("ARC") is responsible for reviewing and approving or disapproving proposed improvements to subdivision property. On August 10, 2010, the property manager notified Homeowners that they would need ARC approval for an irrigation system in their front yard; the property manager also informed them that they needed to submit an application for the landscaping installed in their front yard. Homeowners submitted an application for the irrigation system and an application for an ornamental tree and flowerbed with scalloped edgers. In a letter dated September 8, 2010, the property manager notified Homeowners that their irrigation system and ornamental tree had been approved, but the planter/flowerbed had been denied approval because it did not comply with the subdivision's Standards of Appearance Policy.

Homeowners refused to remove the flowerbed and claimed that the border blocks were needed to prevent erosion. The ARC found no erosion problems. In a letter dated November 22, 2010, the property manager notified Homeowners that the planter and landscape bed had to be removed by December 15, 2010 because they did not "meet the criteria for the uniformity of appearance for the front of homes in Avalon." Homeowners continued to refuse to remove the landscaping in their front yard.

On February 7, 2013, Avalon, Section 4, 6, and 7 Homeowners Association, Inc. ("Avalon"), filed a petition for declaratory judgment and injunctive relief against Homeowners. They alleged that Homeowners had erected and maintained "landscaping border blocks without the approval of [the] Architectural Review Committee and in violation of [the Declaration]." Avalon requested that Homeowners be required to remove their landscaping border blocks and pay damages to Avalon, including attorney fees and costs. Avalon also requested a show cause order requiring Homeowners to appear and show why the court should not issue in injunction. In their answer, Homeowners denied that the border blocks were not in compliance with the Declaration. They also asserted defenses, including allegations that Avalon's selective enforcement of the Declaration violated their rights under several federal civil rights statutes and the due process clause.

On April 4, 2013, the trial court denied Avalon's request for a temporary injunction against Homeowners.

---

[1]The precise date is a disputed issue, as discussed below.

The case was heard on August 27, 2013. Avalon's property manager, Damon Morris, testified that, in response to Homeowners' application for approval of the seasonal flower bed with scalloped edger, "the ARC approved the landscape bed, but they denied the scallop[ed] edger." Mr. Morris acknowledged that the ARC's letter of September 8, 2010 referenced the Standards of Appearance Policy, which mentions landscape beds. He was asked about a letter from Homeowners dated May 16, 2011 in which Homeowners asserted that the ARC's actions were "arbitrary and capricious at best, malicious, racially motivated and discriminatory at worst." They alleged that they had been "perenially harassed by the HOA [Homeowners' Association]." Mr. Morris denied that any of the accusations of prejudice in Homeowners' letter had any factual basis.

On cross-examination, Mr. Morris acknowledged that the Standards of Appearance Policy was not adopted by Avalon until 2010 and that, prior to that time, the only standards used by the ARC were those in the Declaration. Mr. Morris was also asked about a fence in Homeowners' yard, built by the developer, that did not comply with governing standards. There were other similar fences in the neighborhood, and the ARC initially approved Homeowners' fence for that reason. Then, eighteen months later, the ARC decided to revoke its approval. After Homeowners retained counsel, the matter was resolved and Homeowners were allowed to keep their fence. Mr. Morris testified that Homeowners had complained about residents of the neighborhood using guest parking spots, thereby blocking Homeowners' view of the lake. The parking issue was not resolved to Homeowners' satisfaction.

Homeowners introduced a photograph dated October 2007 showing the planter in question in their yard. They questioned Mr. Morris about other landscaping in the neighborhood that used scalloped blocks and had been approved by the ARC. Homeowners also asked Mr. Morris about other alleged violations of the Declaration that had been allowed by the ARC.

On redirect, Mr. Morris explained that the other border blocks about which he had been questioned were not in the middle of the front yard as in Homeowners' case. In Homeowners' case, the ARC approved the landscaping but not the border blocks. Based upon the language of the Declaration, Mr. Morris stated, the ARC considered whether a particular improvement was consistent with design guidelines and "compatible with other improvements constructed within the development." Mr. Morris also testified:

Q. So is Mr. Chaudhuri's border blocks—are they consistent within the neighborhood?

3

A.  No, sir.

Q.  Are they compatible with the esthetics in the neighborhood?

A.  Not in the opinion of the Architectural Review Committee.

Q.  Well, and I think Mr. Johnston [defense counsel] brought that out.  The blocks themselves aren't.  Is that correct?

A.  Correct.

Q.  It's where they are located?

A.  Correct.

Q.  Okay.  Are there any other blocks of that shape, form, or fashion right in the middle of anybody's yard?

A.  No, sir, not to my knowledge.

Mr. Morris later affirmed that, "other than the fact that this flower bed was in the center of the yard with landscaping blocks, it would have been consistent [with the neighborhood]."  Thus, it was the location of the blocks that caused the ARC to deny approval.

Rosemary Kelly, an officer on the Avalon board of directors, testified that Homeowners' property was in violation of the restrictive covenants.  Ms. Kelly was a member of the ARC when the Standards of Appearance policy was adopted.  She stated that the board wanted to create "a consistent documentation for residents to understand what would be approved or not approved."  Asked why the ARC did not approve Homeowner's landscaping, she stated that the issue was "lack of consistency" in that "[t]here was no other property that has a freestanding landscape bed in the [front] yard that has any border blocks around it."  Ms. Kelly testified that it was the responsibility of the board and the ARC to enforce the restrictive covenants; otherwise, "the esthetics of the community come into—into potentially being negatively impacted and could reduce property values."

Ms. Kelly stated that she did not think the border blocks around Homeowners' landscape bed were an eyesore.  If they were up against the house, they would be compatible with the development.  She further stated: "I personally think they look fine.  It's the inconsistency and placement."  Ms. Kelly testified that there was no other home in the development with border blocks around a landscape bed in the middle of the front yard.

Alexander Greenwood was member of the ARC at the time when Homeowners' landscaping application was denied.  He testified: "It was inconsistent with the other homes in the neighborhood.  We didn't feel it was in compliance with the standards of the neighborhood."  He further stated that the border blocks were not compatible when used in the middle of the front yard.  The main issue was the fact that the border blocks formed an island in the front yard.

4

Homeowners called Richard Yarbrough, a member of the ARC during the relevant time period, as a witness. He testified about the problem with Homeowners' landscaping—the fact that it was in the middle of the front yard and used the scalloped border blocks.

Dilip Chaudhuri, one of the Homeowners, testified that the purchase agreement regarding Homeowners' house in Avalon subdivision was signed in January or February 2007, before the house was built. He testified about a photograph of the house which showed a date of October 24, 2007, before they moved into the house; the photograph showed that the landscaping at issue was already there. Mr. Chaudhuri testified that, without the border blocks, the mulch on the landscape bed would wash away. This was one reason why he refused to remove the border blocks. Mr. Chaudhuri also stated:

> The second reason is that I had been picked at by the ARC or the board for no fault of mine for over several years. I had to pay legal expenses because of that erroneous actions [regarding the fence issue], and they did not own up to anything. They did not apologize to me that they made a mistake. So at this point, my position is that just because—because I am not a born U.S. citizen, I am—I am not white, I am different, so they are discriminating against me. That is my position, right or wrong.

Mr. Chaudhuri testified about his disagreements with the ARC regarding the fence issue and the parking issue (referenced above).

The court questioned Mr. Chaudhuri further about the photograph of the house:

> THE COURT: On your picture here, again, you know, I'll take it [on] faith that it was taken October 24th. The rocking chair that's there on the front porch, is that your rocking chair, do you recall?
> THE WITNESS: Yeah.
> THE COURT: Again, it's a little unusual for—for you to be able to take possession of the house before your deed of the house. Were you moving furniture into the house before you even received the deed?
> THE WITNESS: We did some because we had furniture from other homes that we are put [sic] in storage and moving it. I—I can show the court the original picture in my computer, and you cannot—you cannot manufacture those dates.

*Trial court's ruling*

The court entered an order on September 15, 2013 in which it ruled in favor of Avalon. With respect to the restrictive covenants and their enforcement in this case, the court made the following pertinent findings:

1. The Court found that Plaintiff's Restrictive Covenants are vague and that their enforcement is very subjective. However, the Court found that the Covenants [in the Declaration] are enforceable as long as the homeowner is on notice of the Board's general authority and the Board then follows its own appropriate procedures in enforcing the Restrictive Covenants, then the Restrictive Covenants can be enforced.

2. The Court found that even though Restrictive Covenants may not be favored by the law, the Court does not strike them down because they may be subjective in nature.

3. The Court found that the Plaintiff's Restrictive Covenants clearly define what an improvement is, that it clearly includes landscaping, and when the homeowners signed and purchased into the community and accepted the part of the Deed regarding Restrictive Covenants, that he may have to get permission for any improvement made that would be compatible with the rest of the neighborhood. Therefore, the Court found the Defendants subject to the Restrictive Covenants and, the Restrictive Covenants as written, enforceable.

4. The Court found that the Plaintiff noticed Defendants were making improvements to their lot, that Plaintiff put Defendants on appropriate notice that Defendants did not get permission for said improvements and notified Defendants that they needed to get permission for their irrigation and landscaping brick improvements.

5. The Court further found that Plaintiff went through the proper procedures to meet, vote and notify Defendants that the irrigation improvement was approved but that the landscaping bricks were not approved. The Court specifically found that Plaintiff enforced their rules appropriately.

6. The Court specifically found that the Plaintiff's enforcement of its Restrictive Covenants [was] not arbitrary or capricious. The Court found that Plaintiff stated clear reasons for its denial of Defendants['] request for landscaping bricks: inconsistency or incompatibility with the neighborhood, and there were no other homes with the type of bricks in that type of arrangement in their front yard.

The court found no evidence to support Homeowners' claims of selective enforcement. The court then considered Avalon's request for attorney fees and gave a detailed account of its

reasoning in awarding $2,000 out of the $10,000 claimed by Avalon.

Avalon filed a motion to alter or amend the judgment asserting that Homeowners' disregard for the restrictive covenants and their frivolous claims caused Avalon to incur additional attorney fees. Avalon requested that the trial court amend the judgment to award it the requested amount of attorney fees. The court denied Avalon's motion, stating that, although the attorney fees claimed by Avalon were reasonable and necessary, the court considered the mitigating circumstances, "specifically that the landscape border blocks at issue in this case were in place on Defendants' front lawn at or near the time of their purchase of their home and that the Defendants reasonably believed they had the right to have the border blocks."

On appeal, Homeowners raise the following issues: (1) whether the trial court erred in holding that the restrictive covenants were valid and enforceable and could be used to require Homeowners to remove the landscape border blocks at issue; (2) whether the trial court erred in allowing Avalon to apply the Standards of Appearance Policy retroactively; (3) whether such retroactive application constitutes a violation of due process; and (4) whether enforcement of the restrictive covenants to prohibit the use of the landscape border blocks at issue is arbitrary and capricious and an abuse of discretion. Avalon raises several additional issues: (1) whether the trial court abused its discretion in awarding it only $2,000 of the $15,320 in attorney fees it was forced to incur in this case; and (2) whether Avalon should be awarded attorney fees and costs on appeal.

ANALYSIS

*Restrictive covenants*

We begin with the main issue of whether the trial court erred in upholding Avalon's application of the restrictive covenants to Homeowners in this case.

Tennessee law does not favor restrictive covenants because they are in derogation of a property owner's fundamental right to the "free use and enjoyment of property." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 474-75 (Tenn. 2012). Courts construe restrictive covenants strictly, and any doubt as to the applicability of such a covenant must be resolved against the restriction. *Id.* at 481. Nonetheless, restrictive covenants applicable to residential developments and administered by homeowners' associations, which have proliferated in recent decades, have been recognized as valid and enforceable under certain conditions. *See id.* at 475. The following principles govern:

Restrictive covenants conditioning the right of property owners to make

7

improvements on the approval of a homeowners association or architectural committee are generally valid and enforceable. *See Association of Owners of Regency Park Condominiums, Inc. v. Thomasson*, 878 S.W.2d 560, 563-565 (Tenn. Ct. App. 1994); *see also Snowmass Am. Corp. v. Schoenheit*, 524 P.2d 645, 647-48 (Colo. Ct. App. 1974); *Hollingsworth v. Szczesiak*, 84 A.2d 816, 821 (Del. Ch. 1951). The prevailing view in this jurisdiction is that these sorts of restrictive covenants will be enforced as long as the entity administering them acts reasonably and in good faith. *See Indian Hills Club Homeowners Ass'n, Inc. v. Cooper*, 1995 WL 763823, at *3.

Restrictive covenants are enforceable even though they vest discretionary powers with the architectural committee. *See Country Club of La. Prop. Owners Ass'n, Inc. v. Dornier*, 691 So.2d 142, 150 (La. Ct. App. 1997) (Fitzsimmons, J., concurring). The courts will uphold review criteria as long as they provide a reasonable framework for the committee's decision, *see Winslette v. Keeler*, 220 Ga. 100, 137 S.E.2d 288, 289 (Ga. 1964), and as long as the committee developing the criteria is acting reasonably and in good faith. *See Indian Hills Club Homeowners Ass'n, Inc. v. Cooper*, 1995 WL 763823, at *4; *Country Club of La. Prop. Owners Ass'n, Inc. v. Dornier*, 691 So.2d at 150. When the restrictive covenants establish a review committee but do not contain specific criteria for the committee to follow, the validity of the criteria and the committee's interpretation of the criteria will be judged by a standard of reasonableness. *See 4626 Corp. v. Merriam*, 329 So.2d 885, 889 (La. Ct. App. 1976).

*Vills. of Brentwood Homeowners Ass'n, Inc. v. Westermann*, No. 01A01-9708-CH-00388, 1998 WL 289342, at *3 (Tenn. Ct. App. June 5, 1998); *see also Hickory Woods Estates Homeowners Ass'n v. Parman*, No. 01A01-9901-CH-00034, 1999 WL 617623, at *3 (Tenn. Ct. App. Aug. 17, 1999).

Whether the approval or disapproval of an improvement is reasonable "is a factual question to be determined in light of the circumstances." *Indian Hills Club Homeowner's Ass'n, Inc. v. Cooper*, No. 01A01-9507-CH-00319, 1995 WL 763823, at *4 (Tenn. Ct. App. Dec. 29, 1995). The most important criterion applicable to this determination is whether there is "lack of compliance with the specific restrictions of the subdivision and construction that is not consistent or harmonious with the overall plan of development or with neighboring property." *Id.* (citations omitted). In determining whether the homeowners association or architectural committee acted with reasonableness and good faith, the court "must consider the surrounding circumstances and general scheme of development that has been established" prior to the improvements at issue. *Id.* at *5.

There is no real dispute in this case that the restrictive covenants required all landscaping improvements to be approved by the ARC and that the landscaping at issue constitutes an "improvement" under the Declaration's definition. The Declaration contains the following relevant provision concerning the authority of the ARC:

> No improvement shall be erected, constructed, placed, maintained, or permitted to remain on any Lot which is owned by any person other than Developer until the Plans therefor (the "Plans") shall have been submitted to and approved in writing by the ARC, *which shall determine in its sole discretion whether or not the proposed Improvement, and all features thereof, is consistent with the Design Guidelines (the "Design Guidelines") as set forth in Paragraph 3 of this Article V and otherwise compatible with other Improvements constructed within the Development. The ARC shall be the sole judge and arbiter of such consistency and compatibility. . . . The ARC may refuse approval of any Plans that in its sole discretion are inconsistent with the overall purpose of aesthetic values of the Development or the architectural standards described in the Design Guidelines.*

(Emphasis added). Although the Declaration gives the ARC the authority to promulgate Design Guidelines, the ARC had not, as of the relevant time period, exercised its discretion to do so.

The trial court made specific factual findings as to the reasonableness of the ARC's actions, including the following:

> 5. . . . The Court specifically found that Plaintiff enforced their rules appropriately.
> 6. The Court specifically found that the Plaintiff's enforcement of its Restrictive Covenants were not arbitrary and capricious. The Court found that Plaintiff stated clear reasons for its denial of Defendants request for landscaping bricks: inconsistency or incompatibility with the neighborhood, and there were no other homes with the type of bricks in that type of arrangement in the front yard.
> 7. The Court specifically found that there was no proof of selective enforcement on behalf of Plaintiff.

Homeowners emphasize the court's finding that the restrictive covenants are "vague" and "very subjective" in their enforcement. The Court went on to conclude, however, that the covenants are enforceable "as long as the homeowner is on notice of the Board's general authority and the Board then follows its own appropriate procedures in enforcing the

9

Restrictive Covenants." As stated above, as long as the actions of the ARC are reasonable and taken in good faith, the restrictive covenants are enforceable. *See Westermann*, 1998 WL 289342, at *3.

Homeowners argue that the covenants "contain no specific prohibition against such flowerbeds and border blocks." The law does not, however, require that the restrictive covenants be specific in their criteria. The ARC has the discretion, under the Declaration, to determine what improvements are consistent with the neighborhood. Homeowners complain that, "to require [Homeowners to remove their landscape border blocks, the restrictive covenants have had to be extended by implication by the ARC on grounds that the border blocks were inconsistent and incompatible with the neighborhood." That is exactly what the ARC decided, and Homeowners have not established that the ARC acted unreasonably or without good faith. The evidence does not preponderate against the trial court's findings upholding the actions of the ARC.

## *Standards of Appearance Policy*

The Standards of Appearance Policy was adopted by the ARC in 2010, several years after Homeowners installed the border blocks at issue here. Homeowners argue that the ARC applied this policy retroactively to them, thereby violating their due process rights. We cannot agree.

The trial court did not mention the Standards of Appearance Policy in its decision, probably because this policy has no relevance to this case. As Homeowners correctly point out, this policy was adopted after they installed their border blocks. Ms. Kelly, an Avalon board member, testified that the Standards of Appearance Policy was adopted to give residents some guidance about "what would be approved or not approved." The policy does not address landscaping border blocks. While one of the letters sent by Avalon to Homeowners mentioned this policy, the ARC's decision to deny Homeowner's request for approval of the border blocks was made in accordance with the general standard established in the Declaration of consistency and compatibility with the neighborhood.

We find no evidence to support Homeowners' argument that the Standards of Appearance Policy was retroactively applied to their case.

## *Attorney fees*

The Declaration provides that, in the event that Avalon or an aggrieved owner employs counsel to enforce a restrictive covenant, "the prevailing party in any legal action shall be entitled to recover from the non-prevailing [party] its costs and expenses, including

10

reasonable attorney's fees, incurred in such action." Avalon argues that the trial court erred in awarding it only $2,000 out of the $15,320 incurred at the trial level.

The award of attorney fees is within the trial court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). In reviewing the award, we look at the evidence in the light most favorable to the trial court's decision. *Id.* A reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

The trial court found the attorney fees generated by Avalon to be reasonable, but went on to explain, in detail, its decision not to award the full amount requested:

> The Court found that Defendant[s'] violation itself was relatively minor and that the Board's drawing the line in the enforcement of its Restrictive Covenants was valid.
>
> The Court found that based upon the proof, the landscaping stones in and of themselves are not unattractive, ugly or an eye sore. However, the Court found that the landscaping bricks are just not allowed and are not compatible with the rest of the neighborhood. The Court found that for attorney's fees purposes, the foregoing would tend to mitigate the Defendant[s'] damages significantly.
>
> The Court considered the timing of when the landscape bricks were put into effect, stating that if it was prior to closing with the full understanding and the authorization of the contractor, then that would give Defendants a bit of a shield. The Court found that although the Defendants did not remove the landscape bricks when told to do so, they have every right to question the Board's authority if they had been in place for several years, even prior to their closing on the purchase of their home; however, Court found that there was some question as to whether or not the landscaping bricks were put into place prior to their closing on the property. Nevertheless, the Court found the landscape bricks being in place slightly before or close to the time of closing a pretty significant factor that the Court has to consider in mitigating whether Defendants should be required to pay attorney's fees for the Board's actions.

11

The Court ruled that it had a hard time believing that the contractor would allow Defendants to put in landscaping bricks prior to closing. However, Defendants submitted credible proof that the landscape bricks were put in before closing. The Court found that based on its finding the landscape bricks were put in close to the closing date, that Defendants had a right to question the Board['s] authority based upon their belief that they had the right to have the landscape bricks where they were.

The Court ruled that Defendants did real damage to their defense by claiming that there was racism involved in this case without proof. That such allegation truly distracts the Court from the main issue and that this case had nothing to do with race.

. . .

With regard to attorney fees, the Court found that Plaintiff was going to claim more than Ten Thousand Dollars ($10,000.00) in attorney's fees and that considering the subjectiveness of the Restrictions in place and the timing of when the landscape bricks were installed, the Court found that Defendants should be responsible for Two Thousand Dollars ($2,000.00) of Plaintiff's attorney's fees to offset the expense of Plaintiff in prosecuting this claim against Defendants . . . .

The Court found that Plaintiff prosecuted the case with a bit more zeal than it would have preferred them to do. However, the Court ruled that they were within their right to do so and upheld that right.

The Court found that Plaintiff was right, and has the right to enforce its claims, and the importance of having restrictions and covenants. However, the Court found that the right comes with a responsibility and that just because the Association prosecutes its rights does not mean it is going to recoup all its cost.

The trial court heard all of the evidence and evaluated the credibility of all of the witnesses. Avalon disagrees with the court's decision regarding attorney fees, but it has not identified any respect in which the court applied an erroneous legal standard or otherwise abused its discretion.

Avalon has requested its attorney fees on appeal, and we have concluded that it should receive an award for all reasonable and necessary attorney fees on appeal.

CONCLUSION

We affirm the decision of the trial court and award the appellee its reasonable and necessary attorney fees in prosecuting this appeal. The case is remanded to the trial court to determine the amount of attorney fees to be awarded. Costs of this appeal are assessed

against the appellant, and execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE