STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-1447


HIDDEN HILLS COMMUNITY, INC.

VERSUS

FRANK ROGERS, JR., ET AL.


**********
APPEAL FROM TH`E
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-C-4095-D
HONORABLEDONALD W. HEBERT, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Glenn B. Gremillion, Billy Howard Ezell, and *Arthur J. Planchard, Judges.

* Honorable Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as *Judge Pro Tempore.*


REVERSED AND REMANDED.



**André Doguet**
**1223 St. John Street**
**Lafayette, LA 70506**
**(337) 235-7144**
**Counsel for Plaintiffs/Appellants**
    **Hidden Hills Community, Inc.**
    **Bobby Broussard**

**Francis A. Olivier, III**
**957 Napoleon Ave.**
**Sunset, LA 70584**
**(337) 662-5242**
**Counsel for Defendant/Appellee**
      **Frank Rogers, Jr.**

GREMILLION, Judge.

In this case, the plaintiff, Hidden Hills Community, Inc., appeals the judgment in favor of the defendant, Frank Rogers, Jr., finding that he was not in violation of their restrictive covenant. Rogers also appeals the trial court's failure to grant his exceptions of no right of action and/or no cause of action. He asserts the peremptory exception of prescription and abandonment for the first time on appeal. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Hidden Hills is a community surrounding a lake. The developers of Hidden Hills adopted a set of restrictions and affirmative duties in order to maintain the community in the manner it deemed fit and recorded them in the records of the Clerk of Court for the Parish of St. Landry. Article 17 of the Restrictions provides that lots must be kept "reasonably neat and clean." In September 2001, Hidden Hills filed a Petition for Declaratory Judgment seeking to enforce the above restriction and to have the trial court determine if Rogers' property was "reasonably neat and clean" in accordance with the subdivision restrictions. It further sought to assess Rogers with a $200.00 per day fine in accordance with the rules. Rogers filed an Exception of No Right of Action urging that Hidden Hills did not have the authority to bring the lawsuit. The trial court dismissed the exception. After a trial on the merits in February 2003, the trial court found that Rogers' "presentation in his decoration and landscaping do not violate the covenants as written." Hidden Hills thereafter filed a Motion for New Trial, which was denied. Hidden Hills now appeals.

## ISSUES

Hidden Hills' sole assignment of error is that the trial court committed

1

manifest error in finding that Rogers' property did not violate the Act of Amended Restrictions of its community. We shall review the trial court's decision in that regard. Rogers assigns as error the trial court's failure to grant his peremptory exception of no right of action. However, since he failed to file an answer to appeal, we need not address this assignment pursuant La.Code. Civ. P. art. 2133.

## PRESCRIPTION

Rogers urges, for the first time on appeal, that Hidden Hills' claims against him have prescribed and/or been abandoned pursuant to La.Civ.Code arts. 781-782.

La.Civ.Code art. 781 states:

No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.

Rogers claims that the suit is prescribed because several of the residents had begun noticing his unusual manner of decoration as early as 1998. To wit, he states:

1. Bobby Broussard testified that in 1998 he was aware that his home was colored a light pastel, he had noticed bones on the trees, his sidewalks had been painted in a striped fashion, the bottom of his house was painted in a checkerboard fashion, and he had items hanging from his trees.

2. Alvin Guidroz testified by the time he finished construction on his house in 1997, Rogers had life rafts, resin plastic chairs painted florescent colors and umbrellas and different colored carpet on his lawn.

We disagree and do not find these things were enough to qualify as the commencement of a noticeable violation. We hold that bright and unusual paint choices as well as fluorescent painted lawn chairs do not meet the standard of not "reasonably neat and clean." The testimony below reveals that the massive

2

accumulation of various objects in Rogers' yard did not become a noticeable violation until late 2000, when the residents of the community began to report it to the Hidden Hills Board of Directors as a violation of the covenant. This assignment of error is dismissed as being without merit.

## ABANDONMENT

In connection with his claim of prescription, Rogers argues that La.Civ.Code. Art. 782 applies, which provides that building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction, and that Hidden Hills has abandoned its claim. La.Code. Civ.P. art. 2163 (emphasis added) states in pertinent part:

> The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to the submission of the case for a decision, and if *proof of the ground of the exception appears of record.*

There is absolutely no proof whatsoever in the record pertaining to abandonment of the Hidden Hills covenant agreement. This assignment of error is also without merit.

## REASONABLY NEAT AND CLEAN

We will not set aside a trial court's finding of fact in the absence of error or unless it is clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La.1989).

> The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Id.* at 844.

Though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot

3

be manifestly erroneous or clearly wrong." *Stobart v. State, Through DOTD,* 617 So.2d 880, 883 (La.1993). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 882.

A restrictive covenant is a contract and, as such, is subject to the general rules governing contracts. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. Restrictive covenants are governed by La.Civ.Code arts. 775 et seq. as they are building restrictions. La.Civ.Code art. 775 defines building restrictions:

> Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved.

Further, "[b]uilding restrictions may impose on owners of immovables affirmative duties that are reasonable and necessary for the maintenance of the general plan." La.Civ.Code art. 778. The affirmative duty in question under the "MAINTENANCE" heading of the Rules and Restriction and/or by-laws of Hidden Hills Community, Inc., states:

> Lots, both occupied and unoccupied, are expected to be kept in a reasonably neat and clean condition, with grass not to exceed 18 inches in height. Upon complaint by other members, the offending member's lot may be mowed or cleaned at the direction of a member of the board and charges for the work shall be presented for payment to the offending property owner.

After reviewing the evidence, particularly the photographs, we find that the trial court's finding that Rogers' property was "reasonably neat and clean" was not reasonable. WEBSTER'S NEW COLLEGIATE DICTIONARY 212 (10TH ED. 1993) defines "clean" as "free from dirt or pollution." It is synonymous with words such

4

as "immaculate," "spotless," and "unsullied." WEBSTER'S COLLEGIATE THESAURUS 140 (1976). It is in contrast with words such as "grubby," "messy," "slovenly," and "foul." *Id.* "Neat," on the other hand, is defined as "free from irregularity," and "marked by tasteful simplicity." WEBSTER COLLEGIATE DICTIONARY 775 (10TH ED. 1993). When used as an adjective, it means, "plain, pure, unadulterated, undiluted and unmixed," or "manifesting care and orderliness." Webster's Collegiate Thesaurus 545 (1976). It is synonymous with words such as "orderly," "shipshape," "tidy," "trim," "uncluttered," and "well-groomed." *Id.* Words that contrast "neat" are "disheveled," "disorderly," "sloppy," "slovenly," "unkempt," "untidy," "lax," and "remiss." *Id.*

Bobby Brousssard testified that he began building a home in the Hidden Hills subdivision in 1997, three houses down from Rogers' home. He stated that, at the time his house was completed, in 1998, Rogers' home was colored a light pastel, and there were multi-colored rings in Mardi Gras colors around his trees and bushes. However, he stated that, later that year, Rogers began hanging bones from trees, painting stripes on his sidewalk and a checkerboard pattern on the bottom of his house. By mid-1999, Broussard testified he began hanging more items from trees and placing toilets on his lawn. Broussard, who is President of the Hidden Hills Landowner Association, testified that he began receiving complaints from neighbors in late 2000. He stated that the board had a meeting on March 23, 2001, and Rogers was served on March 25, 2001, with a notice of the violations giving him thirty days to remove boards which were restricting the right of way and lines that were in the lake. Broussard testified that the boards were removed from the lake, but the lines were back on June 6, 2001, and the boards were back in a right of way on June 7, 2001.

Broussard testified that none of the items hanging from the trees have

5

been removed and that, in fact, Rogers has added to the collection with jugs, flags, streamers, and concession stand looking items. He then reviewed with counsel a series of pictures depicting the conglomeration of objects that Rogers has placed on his property.

Frank Rogers, Jr. , testified that he bought the lot in Hidden Hills in June 1986, and began "decorating" his property sometime in 1997, beginning with painting the bottom portion of his house several different colors. However, at this time, the front of his house remained yellow with green shutters. Rogers testified that, over the years, he began "touching up a little bit here and there with a lot of different colors." He testified that the white plastic bleach jugs he has hanging from string between trees are birdhouses, although he has not cut out any holes for the birds. He further testified that, since the institution of the lawsuit, he has added more political signs, jugs, surveyor tape, and triangular banners typically used at car dealerships. He also testified that he has around four or five displays of bundled up empty chlorine bottles strung together hanging from the trees, which he says serve as birdhouses. Rogers has also added a peanut machine, a cash register machine, TVs, pieces of ladders, non-working satellite dishes, snow cone advertisements, a sign that says "rice and gravy," and cow skulls with deer horns and bull horns in them or a telephone sitting on top.

Deanna Cobb, Rogers' immediate next-door neighbor, testified that she has lived in the house next door since 1997. She stated that Rogers' property began to substantially change sometime in November 2000. Cobb testified that Rogers painted his shrubs assorted colors, painted rings around the trees, and painted animal horns and hung them from the trees. He continued adding items to the exterior of his property such as: dishwashers, weedeaters, lawnmowers, squirrel traps, vacuum cleaners, and telephones strung from the trees. Cobb testified that the next thing to

6

occur, following her March 2001 complaint to the board, was a "plastic explosion," which included long pieces of triangular banners, plastic bottles hung from trees, flagging tape banners, political signs, food signs, real estate signs, home loan signs, PVC pipe, rope, television sets, computer monitors, and a plastic grandfather clock. She also noted a screen door suspended in the air, and a glove six or seven feet high in the air on PVC pipe with the middle finger pointing toward her property. Cobb testified that there are in excess of one thousand jugs on Rogers' property, and that he runs his sprinklers all night which cause the jugs to hit each other and make noise all night long.

Alvin Guidroz, who lives across the lake from Rogers' property, testified that he purchased his lot in 1995, and started building in 1997. He stated that, at this time, Rogers' home was neat and well kept, through to 1998. Guidroz testified that, after he moved into his house, he started noticing little changes here and there but nothing to be concerned about. However, he testified that it escalated to the hundreds of jugs, tapes, and assorted sundry items.

While the testimony in this case is brief, the photographic evidence tells the story. Rogers' property evidences thousands of plastic chlorine bottles hung in every which way on his property, brightly painted shrubs, hundreds of political signs, banners, caution tape, and flagging hanging everywhere. It can only be called a veritable junkyard, but brighter and more noticeable as many of the items, such as the white plastic jugs, are suspended from lines run across the trees.

The definition of neat referred to by the trial court, was "clean and in good order; trim, tidy." WEBSTER'S NEW WORLD DICTIONARY 905 (3RD ED. 1994). Using this definition, the trial court found that Rogers' property was "reasonably neat and clean" and not in violation of the covenant. We disagree with our learned colleague. Not only do we find that the property is not "clean and in good order: tidy,

7

trim," we find that it is not "immaculate," "spotless," nor "unsullied." To the contrary, it is "grubby," "messy," "slovenly," and even "foul." The property is certainly not "free from irregularity" or "marked by tasteful simplicity." It is not "plain, pure, unadulterated, undiluted, and unmixed" nor does it "manifest care and orderliness." It is, on the other hand, "disheveled," "disorderly," "sloppy," and "unkempt."

Further, we find that the term "reasonably neat and clean" is not ambiguous in the context used. In drafting the restrictive covenants, the redactors clearly meant to prohibit certain uses to one's property. It would be virtually impossible to draft a set of covenants that would consider all conceivable offending uses of property, notwithstanding the fact that no one would have dreamed up this instant offending use of property.

We acknowledge that "one person's trash is another person's treasure," however, a reasonable person cannot claim that the Rogers' property is neat and clean. He argues that the term "neat and clean" actually describes his property and argued at oral argument that the jugs and other objects are strung in a geometrical manner which should be pleasing to the eye. In a word, that is absurd. Accordingly, we reverse the trial court's finding that Rogers' property was not in violation of the restrictive covenant. We shall not address the penalty assessment, but shall remand this case to the trial court for a determination whether a penalty should be assessed under the restrictive covenants and, if so, how much.

**CONCLUSION**

The judgment of the trial court finding that the defendant-appellee, Frank Rogers, Jr., did not violate the plaintiff-appellant's, Hidden Hills Community, Inc., restrictive covenant is reversed and this matter is remanded to the trial court for a determination of the penalty assessment. All costs of this appeal are assessed to

8

Rogers.

**REVERSED AND REMANDED.**