960 So.2d 1032 (2007)
Aaron R. CATHCART and Betty Leboeuf Cathcart
v.
James N. MAGRUDER, et al.
Aaron R. Cathcart and Betty Leboeuf Cathcart
v.
James N. Magruder, Chip McVea and Ed Branch
James Ricky Magee and Playground, L.L.C.
v.
Aaron R. Cathcart.
Nos. 2006 CA 0986, 2006 CA 0987, 2006 CA 0988.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*1033 Michael D. Conroy, Covington, Counsel for Plaintiffs/Appellants Aaron R. Cathcart and Betty LeBoeuf Cathcart.
William J. Crane, Covington, Counsel for Defendants/Appellees James Rickey Magee, Cathy Madere Magee, Chip McVea, Ed Branch, James N. Magruder, and Playground, L.L.C.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
This appeal arises from a judgment rendered in three consolidated civil actions relating to the interpretation and enforcement of building restrictions and conventional servitudes. Aaron R. Cathcart and Betty LeBoeuf Cathcart, plaintiffs in two of the actions and defendants in the third, appeal the judgment. For the following reasons, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On May 28, 1999, Circle T, Ltd. (Circle T), a Mississippi corporation, acquired a tract of rural land in Washington Parish from Green Land Limited Partnership. This original tract, subsequently known as "MaKinley Cove," had an area of 411.93 acres, including a portion of Lake MaKinley and all of two smaller lakes.[1] On July 18, 2000, Circle T sold a portion of its *1034 property, encompassing 20.648 acres in area, to James and Cathy Magee (the Magees).[2] The act of sale also established a "non-exclusive servitude and right of ingress and egress for passage . . . in favor of the [Magee property] and subsequent parcels conveyed." This first servitude of passage is served by an existing gravel road that extends westward from Louisiana Highway 25, which forms the eastern boundary of the original tract, to and across a narrow portion of Lake MaKinley, with a newer section extending southward towards the Magee property and forming part of the southwest boundary of that property.
Although only the Magees appear as owners of record in the act of sale to them, Mr. Magee acknowledged in his trial testimony that they acquired the property on their own behalf and that of Chip McVea and Ed Branch, whom he acknowledged were co-owners. At some point after the Magees acquired their tract of approximately 20 acres, they sold a five-acre parcel to Barry Kennedy and another five-acre parcel to Randy Magee, leaving them and their co-owners, McVea and Branch, slightly over ten acres owned in indivision.
On August 11, 2000, Circle T and the Magees executed an instrument entitled "Restrictive Covenants for MaKinley Cove and Adjacent Property Parcels [etc.]," establishing building restrictions for MaKinley Cove. Those provisions relevant to this litigation provide as follows:
In order to assist in the safe and reasonable use of the land and lake and for the benefit of owners, family and future owners of parcels that may be adjacent to MaKinley Cove[,] the appearers do hereby establish restrictive covenants and do encumber the parcels owned by them by subjecting them to the following restrictions and covenants to-wit:
1. All lots and acreage are hereby designated as recreational, residential and non-commercial lots and are restricted to such purposes only. No building, trailer or structure shall be erected, altered, placed, permitted or allowed to remain on any such property except in connection with the above permitted uses.
. . . .
3. No lot or parcel shall be divided into smaller parcels of less than five (5.0) acres.
. . . .
5. Parcels adjacent to the lake and the lake are designated for private use (owners and family). No guest is allowed unless accompanied by an owner, whether on the lake, hunting or on the premises. Any individual not accompanied is a trespasser subject to penalties.
A second servitude of passage (the "boat launch" servitude) was created on October 10, 2000. The second servitude of passage extends from the intersection of the original gravel road and the first servitude's newer section westward to a boat launch on the Bogue Chitto River, which forms the western boundary of the original tract.
On the same day that the "boat launch" servitude was created, October 10, 2000, Circle T sold a triangular parcel of its MaKinley Cove property to the Cathcarts. The Cathcarts' property encompasses 5.32 acres, with the first servitude of passage crossing the property, parallel with its northern boundary. The act of sale expressly provided that the property was subject to both the first and second servitudes of passage, as well as the building *1035 restrictions established by Circle T and the Magees. At the time the Cathcarts acquired their property, a locked gate regulated access to the servitude's gravel road at Louisiana Highway 25. Property owners in MaKinley Cove were provided keys to the gate.
On October 11, 2000, James Magruder, Dennis Crowe, Virgil Magruder, and Richard Knight, with their respective spouses, jointly purchased a twenty-acre tract from Circle T. On November 30, 2000, through an instrument entitled "Private Act of Capital Contribution," those purchasers transferred ownership of the tract to a limited liability company, Playground, L.L.C. The evidence at trial showed that Playground, L.L.C. had five members: James Magruder, Dennis Crowe, Virgil Magruder, Richard Knight, and a later-added member, Bill Durdin.
In August 2001, Circle T removed the gate across the gravel road at Louisiana Highway 25. Differences and confrontations developed between the property owners and other individuals using the gravel road to access the tracts in MaKinley Cove. The disputes centered on the issues of whether guests were required to be physically accompanied by property owners while using the gravel road and the meaning and identity of "owners" as used in the building restrictions.

The First Suit
On August 7, 2003, the Cathcarts filed a petition for damages and injunctive relief against James Magruder, Tammy Magee Magruder, and the Magees, alleging that those defendants continually violated paragraphs 1, 3, and 5 of the MaKinley Cove building restrictions "by allowing guests to visit their property unaccompanied by an escort and by subdividing their property." The Magees filed an answer in the form of a general denial of the petition's allegations. The Magruders excepted to the petition on the grounds that it failed to state a cause of action or right of action against them, as they individually were not owners of property in MaKinley Cove.
On January 26, 2004, the Cathcarts filed a supplemental and amending petition, deleting Ms. Magruder as a defendant, adding Playground, L.L.C. as a defendant, and alleging Mr. Magruder's status as a member of Playground, L.L.C. in violating the building restrictions. The Cathcarts also supplemented their description of Mr. Magruder's violations, alleging that he "invited unescorted individuals to use the servitude in favor of Playground, L.L.C., specifically violating the restrictive covenants of MaKinley Cove" and that the defendants' invitees "regularly drove down the unpaved servitude in front of the plaintiffs['] home at excessive speeds[,] endangering the plaintiffs and their invitees and causing damage to the fragile health of Mr. Cathcart." Following a hearing on January 28, 2004, the trial court overruled the Magruders' exceptions.
In response to the supplemental and amending petition, Mr. Magruder again filed a peremptory exception raising the objections of no cause and no right of action, as well as a dilatory exception of vagueness. The Magees and Playground, L.L.C. also excepted to the supplemental and amending petition on the grounds of vagueness. Following a hearing on the exceptions on April 16, 2004, the trial court took the matter under advisement. On May 11, 2004, the trial court issued written reasons for judgment sustaining all exceptions, and its judgment in that regard was signed June 30, 2004. That portion of the judgment sustaining Mr. Magruder's peremptory exception dismissed the Cathcarts' claims against him with prejudice. The portion of the judgment sustaining the dilatory exception of vagueness allowed the Cathcarts ten days to *1036 amend their petition to remove the grounds of the objection of vagueness.
On July 17, 2004, the Cathcarts filed a second supplemental and amending petition, alleging that at certain specified times Mr. Magruder, as a member of Playground, L.L.C., the Magees, and those parties' invitees ignored posted speed limit signs and traveled at excessive speeds on the servitude. It was further alleged that on one occasion "four unescorted adults" passed on the servitude on the Cathcarts' property, hauling a boat, "[i]n violation of the restrictive covenants requiring all guests be escorted." Finally, it was alleged that on one stated occasion, McVea, a "non-landowner," drove unescorted on the servitude past the Cathcarts' home, and that Branch, another "non-landowner," regularly passed unescorted on the servitude. The Magees and Playground, L.L.C. filed an answer, which incorporated peremptory exceptions of no cause of action, no right of action, and prescription.
On August 27, 2004, the Cathcarts filed a motion for a preliminary injunction against Mr. Magee and Playground, L.L.C., prohibiting them from allowing unescorted individuals from entering the Cathcarts' property, using the servitude, and using MaKinley Lake.

The Second Suit
On July 16, 2004, the Cathcarts instituted a second civil action against Mr. Magruder, McVea, and Branch. They alleged that as a member of Playground, L.L.C., Mr. Magruder was not an owner of property in MaKinley Cove, citing the trial court's reasons for its judgment of June 30, 2004, sustaining Mr. Magruder's peremptory exception. They further alleged that the building restrictions prohibited access to the first servitude of passage by Mr. Magruder, McVea, and Branch without being escorted by an owner of property in MaKinley Cove, and prayed for a permanent injunction "enjoining the defendants from trespassing on [their] property." The defendants filed a joint answer generally denying the petition's allegations.
On August 27, 2004, the Cathcarts filed a motion for a preliminary injunction against Mr. Magruder, McVea, and Branch, seeking the same type of preliminary injunction as that sought against Mr. Magee and Playground, L.L.C. in their motion filed the same day in the first suit.

The Third Suit
On August 20, 2004, Mr. Magee and Playground, L.L.C. instituted an action seeking declaratory judgment, injunctive relief, and damages against Mr. Cathcart. They alleged that Mr. Cathcart unreasonably interfered with their use of the servitude of passage on the Cathcarts' property by installing a fence encroaching on the servitude; placing various signs, video and audio monitors along the gravel road; placing speed bumps on the roadway; and refusing to allow a grader on the servitude to maintain the roadway. It was also alleged that Mr. Cathcart repeatedly interrogated Mr. Magee and guests as to their right to be on his property and that of Playground, L.L.C., and harassed and stalked Mr. Magee and the members of Playground, L.L.C. The plaintiffs in the third suit sought a declaratory judgment that the building restrictions were unenforceable or abandoned and a preliminary injunction preventing Mr. Cathcart from obstructing or interfering with their use of the servitude, in addition to damages. Mr. Cathcart answered the suit, generally denying all allegations other than those relating to recorded ownership of the involved properties and the establishment of the building restrictions.
The hearing on the preliminary injunction requested in the third suit was held on September 2, 2004. Based upon the parties' stipulations at the hearing, the trial *1037 court ordered that all three actions be consolidated for trial, and also entered a consent judgment granting a preliminary injunction, ordering the Cathcarts to remove all signs located within the servitude except speed limit signs, to limit video surveillance to their own property, to remove the speed bumps on the roadway, and to maintain the roadway on their property with grading consistent with the overall roadway. All parties were ordered to abide by the posted speed limit and were enjoined from harassing or following other persons. The consent judgment reserved to the parties their rights to present all evidence in support of their positions at the hearing on the requests for permanent injunctions and declaratory judgment.
On April 8, 2005, Mr. Magee and Playground, L.L.C. filed a rule for contempt against Mr. Cathcart, claiming that he violated various aspects of the preliminary injunction. On May 18, 2005, the Cathcarts filed a motion to set pending exceptions in the second suit for hearing, as well as various requests for preliminary injunctions and declaratory judgment.
The trial court heard all pending matters on May 26, 2005. The peremptory exceptions of no cause of action and no right of action, filed by the Magees and Playground, L.L.C., were dismissed by stipulation. The trial court took the matters under advisement, and issued its written reasons for judgment on July 25, 2005. On September 26, 2005, it rendered judgment, issuing a preliminary injunction in the first suit to enforce the building restrictions, and making that injunction permanent, and specifically permitting visitors on property while the owner is present. It denied the third suit's request for declaratory judgment declaring the building restrictions either abandoned or unenforceable, as well as the Cathcarts' request for declaratory judgment permitting the erection of a gate and for identification of owners of MaKinley Cove property. The Cathcarts' request for an injunction prohibiting Mr. Magruder, McVea, and Branch from using the servitude was also denied. Finally, the preliminary injunctions set forth in the earlier consent judgment were made permanent, with the exceptions that (1) the Cathcarts' monitoring devices were to be located on their property off the servitude, and (2) that all signs and other objects within the servitude be removed, except for advisory speed limit signs.
The Cathcarts now appeal.

ASSIGNMENTS OF ERROR
The Cathcarts contend the trial court erred in the following respects:
(1) The [c]ourt erred in not finding that ownership in MaKinley Cove by Playground, L.L.C., a limited liability company, violated restrictive covenants at issue in this matter.
(2) The [c]ourt erred in denying the Cathcarts['] request for injunctive relief against James Magruder, Ed Branch[,] and Chip McVea as they are not owners in MaKinley Cove.
(3) The [c]ourt erred in denying the Cathcarts['] request to erect a gate on the servitude;
(4) The [c]ourt erred in denying the Cathcarts['] [request] that the speed limit posted by the developers be maintained on the servitude in front of their home.

ANALYSIS

Playground, L.L.C.
Building restrictions, or "restrictive covenants" as they are generally known in the common law and occasionally termed in Louisiana, are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. La. C.C. art. 775. They generally fall into two *1038 classes: (1) true "building" restrictions, which limit the type and size of structures, and (2) "use" restrictions, which limit the uses which may be made of the immovable and its structures. See Smith v. DeVincent, 322 So.2d 257, 261 (La.App. 2nd Cir.1975). A use restriction may merely involve restraints on the type of use of an immovable, without necessarily imposing restrictions on the type or size of building on the property. See La. C.C. art. 775, Comment (b).
Building restrictions constitute real rights running with the land, and the remedy of landowners seeking to prevent a violation of the restrictions by another is by injunction. Cosby v. Holcomb Trucking, Inc., 05-0470, pp. 6-7 (La.9/6/06), 942 So.2d 471, 475 (quoting Oakbrook Civic Ass'n, Inc. v. Sonnier, 481 So.2d 1008, 1010 (La.1986)). See also La. C.C. art. 779. Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La. C.C. art. 783.
A limited liability company (LLC) is "an entity that is an unincorporated association having one or more members" and organized under the applicable law. La. R.S. 12:1301(A)(10). With limited exceptions, an LLC "may be organized . . . and may conduct business for any lawful purpose, unless a more limited purpose is stated in its articles of organization." La. R.S. 12:1302(A). "Business" is defined as "any trade, occupation, profession, or other commercial activity . . . whether or not engaged in for profit." La. R.S. 12:1301(A)(2). The "whether or not for profit" language of the foregoing definition was added in 1997, and liberalized the original definition of "business," which had required the activities of the LLC to be carried out "for gain, profit, or livelihood." 8 Glenn G. Morris & Wendell H. Holmes, Louisiana Civil Law Treatise: Business Organizations § 44.03 n. 5 (1999).
The Cathcarts argue that because of its status as an LLC, any use of the property by Playground, L.L.C. must necessarily be "commercial" in nature, and therefore violative of the building restrictions. Playground, L.L.C. contends that the Cathcarts are simply confusing the inherent powers of an LLC to conduct "business" with the actual purposes or use of its property. We agree. We know of no legal impediment to a corporation, partnership, or LLC acquiring immovable property limited to residential use, as long as the character of the use complies with any applicable building restrictions, zoning regulations, or other legal use limitations. The Cathcarts have not made any showing that the property of Playground, L.L.C. is used for anything other than recreational and residential purposes. If the "business" of Playground, L.L.C. is the management and maintenance of its property for the recreational and residential use of its members, such does not equate to "commercial" use of the immovable property; its use would still be "recreational, residential and non-commercial" in nature.[3] This assignment of error has no merit.

Use of the Servitudes of Passage
Louisiana Civil Code article 646 defines a predial servitude as "a charge on a servient estate for the benefit of a dominant estate." Predial servitudes are not attached to a particular person but are due to anyone who happens to be owner of the *1039 dominant estate. La. C.C. art. 646, Revision Comments  1977, (c). Thus, a predial servitude is inseparable from the dominant estate and passes with it. See La. C.C. art. 650(A). There must be a benefit to the dominant estate; there is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. La. C.C. art. 647.
Neither contiguity nor proximity of the dominant and servient estates is necessary for the existence of a predial servitude; it is sufficient that their respective location allows one to derive benefit from the charge on the other. La. C.C. art. 648. One estate may be subjected to a servitude for the benefit of several dominant estates. La. C.C. art. 724.
Predial servitudes may be natural, legal, and voluntary or conventional. La. C.C. art. 654. Both servitudes of passage burdening the Cathcarts' property are indisputably conventional predial servitudes in favor of multiple dominant estates, including the residual tract owned of record by the Magees.
A servitude is due to the whole of the dominant estate and to all parts of it; if this estate is divided, every acquirer of a part has the right of using the servitude in its entirety. La. C.C. art. 652. However, in the event of such division of the dominant estate, no additional burden may be imposed on the servient estate. In the case of a right of passage, all the dominant estate owners are bound to exercise that right through the same place. La. C.C. art. 747.
Louisiana Civil Code article 705 describes the conventional servitude of passage, or right of way, and the general parameters of its use:
The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. (Emphasis supplied.)
Similarly, La. C.C. art. 749 provides:
If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose.
The allegations of the Cathcarts' petition against Mr. Magruder, McVea, and Branch and their argument on appeal are limited to the issue of injunctive relief against those parties to prohibit their use of the servitudes of passage only, although the building restrictions are cited as the basis for prohibiting the defendants' use of those servitudes. As the Cathcarts' petition identified the defendants as nonowners of any property in MaKinley Cove, the Cathcarts did not seek injunctive relief to enforce the building restrictions against the defendants, nor did they seek such relief against any of the recognized owners regarding the defendants' use of any owned property. It is therefore unnecessary for us to address any claim that the failure of McVea and Branch to properly record the transfers to them operates to preclude their use of the property as "owners" under the building restrictions, as the use of the servitudes of passage constitutes a separate issue.[4]
The Cathcarts contend on appeal that Mr. Magruder, McVea, and Branch are *1040 precluded from using the servitudes of passage "as they are not owners in MaKinley Cove." The only authority they cite for that proposition is La. C.C. art. 1839:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated under oath.
An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.
In its written reasons for judgment, the trial court noted that "through this litigation all owners have been identified," an obvious reference to La. C.C. art. 1839's second sentence and Mr. Magee's testimony regarding his oral transfers to McVea and Branch. It thus implicitly found that the oral transfers of undivided interests were valid between the parties to those transactions, entitling McVea and Branch to use of the servitudes of passage to access their property.
The servitudes of passage are owed to the dominant estate rather than to individuals, and both servitudes on the Cathcarts' property were unquestionably matters of public record. Changes in the ownership of the dominant estate or the servient estate are immaterial; the owner of the servient estate is bound to suffer the exercise of the right of servitude by the person who happens to be the owner of the dominant estate. See La. C.C. art. 650, Revision Comments  1977, (b). Although the content of the building restrictions are relevant in considering the "reasonable use" of the dominant estates and the related "purpose" of the servitudes of passage, we agree with the defendants that the limitations of use in the building restrictions cannot be incorporated by implication into the servitudes of passage.
The first servitude of passage burdening the Cathcarts' property does not restrict its use to owners of record and to guests accompanied by those owners of the dominant estates, as the Cathcarts contend. It simply establishes a "non-exclusive servitude and right of ingress and egress" in favor of the dominant estates. Thus, La. C.C. art. 705 governs the use of the servitude by persons and vehicles accessing the dominant estates, provided such traffic is "necessary for the reasonable use" of the dominant estates.[5] The "reasonable use" of the dominant estate co-owned by McVea and Branch would logically contemplate their use of the servitude to access the property.
Similarly, the "boat launch" servitude does not expressly limit its use to owners or escorted guests. Its express purpose is to "assist in the reasonable recreational use of the land and river for the benefit of owners, family and future owners" in MaKinley Cove, while acknowledging that it is "[n]ot for public use and only for recreational, non-commercial use." Those limitations likewise do not operate to preclude the use of that servitude by McVea and Branch as unrecorded co-owners of property in MaKinley Cove, as their right of use is enforceable against their co-owners, the Magees, and may properly be construed as benefiting the Magees, as well as themselves.[6]
*1041 In summary, we find that Mr. Magruder's status as a member of Playground, Inc. entitles him to use of the servitudes of passage burdening the Cathcarts' property.[7] Similarly, we find that McVea and Branch have adequately established that their use of the servitudes is necessary for the reasonable use of the dominant estate of which they own undivided, although unrecorded, interests.

The Gate and the Speed Limit
The Cathcarts' residence is situated 194 feet from the servitude of passage on their property. They urge that the existence of the original gate limiting access to MaKinley Cove was a factor in their decision to buy their property, and that their concerns regarding trespassers and the speed of passing vehicles are legitimate. However, as pointed out by the opposing parties, more tracts of property have been sold in MaKinley Cove since the Cathcarts' acquisition of their property, necessarily resulting in more traffic on the servitude. The Cathcarts contend that the trial court erred in permanently enjoining their erection of a gate on the servitude on their property and in refusing to issue a mandatory injunction imposing a speed limit on the servitude.
The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude. La. C.C. art. 748. See also La. C.C. art. 651. Conversely, the dominant estate must exercise its rights in a way least inconvenient for the servient estate. La. C.C. art. 743. If the dominant estate is divided, no additional burden may be imposed on the servient estate. La. C.C. art. 747.
The standard of review for the issuance of a permanent injunction is the manifest error standard. Mary Moe, L.L.C. v. La. Bd. of Ethics, 03-2220, p. 9 (La.4/14/04), 875 So.2d 22, 29. The interrelated issues of whether the placement of the proposed gate would make the use of the servitude more inconvenient and whether the division in ownership imposed an additional burden on the Cathcarts were fact issues. See, e.g., Woodward v. Gehrig, 97-1040 (La.App. 3rd Cir.2/11/98), 707 So.2d 1322, writ denied, 98-0651 (La.4/24/98), 717 So.2d 1177. As trier of fact, the trial court resolved these issues in favor of the defendants. As there are two permissible views of the evidence, requiring an assessment of the credibility of the witnesses and the weighing of the evidence, the trial court's determination is entitled to deference and cannot be considered manifestly erroneous. See Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 883 (La.1993). The same considerations apply to the trial court's determination that imposition of a mandatory speed limit on the servitude was inappropriate and unwarranted under the facts presented at trial.

*1042 DECREE
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs-appellants, Aaron R. Cathcart and Betty LeBoeuf Cathcart.
AFFIRMED.
NOTES
[1] In various legal documents, correspondence, and trial testimony, the term "MaKinley Cove" is used interchangeably for the lake itself, those properties adjoining the lake, and the entire community formed from the original tract. For convenience and consistency, we will use that term only to describe the original tract and the properties deriving from it.
[2] The tract sold to the Magees is located to the south of the Cathcarts' property, but is not contiguous to that property.
[3] In the context of redhibition, the third circuit court of appeal has held that "residential property pertains to property used for residences or dwellings, whereas commercial property applies to areas where trade or business is conducted." Stevens v. Bruce, 04-133, p. 6 (La.App. 3rd Cir.6/2/04), 878 So.2d 734, 738. See also Gwatney v. Miller, 371 So.2d 1355, 1361 (La.App. 3rd Cir.1979).
[4] To the extent that the Cathcarts' brief may indirectly raise the issue of the effect of the public records doctrine on any claimed violation of the building restrictions, as opposed to the use of the servitude of passage, we hold that any such assignment of error has been abandoned, as it has not been briefed by the Cathcarts. See Rule 2-12.4, Uniform Rules of Louisiana Courts of Appeal.
[5] See, e.g., La. C.C. art. 757.
[6] A predial servitude may be acquired for the benefit of the dominant estate by any person acting in the name of or on behalf of the owner of that estate. See La. C.C. art. 735. The acquirer of the servitude need not be a competent person nor owner of the dominant estate. La. C.C. art. 735, Revision Comments  1977 (b). However, the grantor of the servitude, or the owner of the servient estate, may not revoke the servitude he has granted on the ground that the owner of the dominant estate was not a party to the contract, because it is not to the person but to the estate that it is granted. See La. C.C. art. 735, Revision Comments1977, (c). Under La. C.C. art. 735, a co-owner acquires a predial servitude for the benefit of the estate owned in indivision. La. C.C. art. 735, Revision Comments1977 (e).
[7] Unless an LLC's articles of organization expressly limit its management to specified members, all members have management rights and duties. See La. R.S. 12:1311 and 12:1312. Likewise, unless management is so limited, "[e]ach member . . . is a mandatary of the [LLC] for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables. . . ." La. R.S. 12:1317(A). There was no showing at trial that Playground, L.L.C.'s management was limited to less than all members, nor that any member could not make use of its property, as its articles were not introduced into evidence.