AARON R. CATHCART AND BETTY LEBOEUF CATHCART
v.
DAVID MORACE AND PAULA MORACE; RONALD PATTEN AND JOYCE PATTEN; EL WOOD ALBERTS, JR.; CYNTHIA ALBERTS; JOHN MARKOW AND PATRICIA MARKOW; PATRICIA HOPPE; KEITH MORGAN AND THERESA MORGAN; DEBRA BROOKS; ROBIN JOUBERT; SALLY ANSEL; FRANKIE ALLEN; KENNETH BYRD, JR.
Nos. 2008 CA 1018, 2008 CW 0174
Court of Appeals of Louisiana, First Circuit.
May 13, 2009.
Not Designated for Publication.
MICHAEL D. CONROY, STEPHEN K. CONROY, TOM SNYDER, JR., REBECCA E. FENTON, Counsel for Plaintiffs/Appellees Aaron R. Cathcart and Betty Cathcart.
WILLIAM J. CRAIN, Counsel for Defendants/Appellants David Morace, Paula Morace, Ronald Patten, Joyce Patten, Elwood Alberts, Jr., Cynthia Alberts, John Markow, Patricia Markow, Patricia Hoppe, Keith Morgan, Teresa Morgan, Debra Brooks, Robin Joubert, Sally Ansel, Frankie Allen, and Kenneth Byrd, Jr.
Before: CARTER, C.J., PARRO, KUHN, GUIDRY, and GAIDRY, JJ.
GUIDRY, J.
Defendants, David Morace, Paula Morace, Ronald Patten, Joyce Patten, Elwood Alberts, Jr., Cynthia Alberts, John Markow, Patricia Markow, Patricia Hoppe, Keith Morgan, Teresa Morgan, Debra Brooks, Robin Joubert, Sally Ansel, Frankie Allen, and Kenneth Byrd, Jr., appeal from the trial court's judgment, granting summary judgment in favor of plaintiffs, Aaron and Betty Cathcart. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On May 28, 1999, Circle T Limited (Circle T) purchased 411.93 acres from Green Land Limited Partnership. Thereafter, Circle T sold a portion of its property, consisting of 20.648 acres, to James and Cathy Magee (Magees). On August 11, 2000, Circle T and the Magees executed an instrument entitled "Restrictive Covenants for MaKinley Cove and Adjacent Property Parcels Situated in Headright 40 and Section 28, Township 1 South, Range 10 East, Washington Parish, Louisiana." This document was filed in the conveyance records in Washington Parish on August 14, 2000.
On October 10, 2000, Circle T sold a portion of its property, consisting of 5.32 acres, to Aaron and Betty Cathcart (Cathcarts). A fifty-foot right of way, running from Highway 25 on the eastern side of the original 411.93 acre tract to the Bogue Chitto River on the west, crosses the Cathcarts' 5.32 acre tract.
On September 29, 2006, the Cathcarts filed a petition, naming sixteen property owners as defendants. The Cathcarts asserted that beginning October 15, 2004, Circle T sold parcels of its property to these defendants and the related acts of sale omitted Article 5 of the restrictive covenants. Article 5 provides that parcels adjacent to the lake and the lake are designated for private use (owners and family), no guest is allowed unless accompanied by an owner, whether on the lake, hunting, or on the premises, and that any individual not accompanied is a trespasser, subject to penalties. The Cathcarts asserted that the absence of this article from the restrictive covenants would give unrestricted access to the Cathcarts' property through the servitude and would create an unreasonable nuisance and danger to the Cathcarts. Accordingly, the Cathcarts sought a declaratory judgment finding that the properties owned by the defendants are burdened by the restrictive covenants established by Circle T and the Magees in the August 11, 2000 document and sought issuance of a preliminary injunction, later to be made permanent, enjoining the defendants from violating the restrictive covenants.
On May 7, 2007, the defendants filed a motion for summary judgment, asserting that the restrictive covenants only apply to property that is in and adjacent to the lake, known as MaKinley Cove Lake. Because none of the defendants' properties are in and adjacent to the lake, they urged that summary judgment should be granted and the Cathcarts' suit should be dismissed. Thereafter, on May 30, 2007, the Cathcarts filed an opposition to the defendants' motion for summary judgment and also filed a cross-motion for summary judgment asserting that the restrictive covenants, as written, are not ambiguous and apply to the entirety of the property owned by Circle T and the Magees when the covenants were executed and recorded. Therefore, according to the Cathcarts, the restrictions are binding on the defendants who subsequently acquired the property burdened with the restrictions. Alternatively, the Cathcarts asserted that if any ambiguity exists, extrinsic evidence may be used to determine the intent of the parties, and intent is a question of fact, the determination of which is not appropriately decided on a motion for summary judgment.
Following a hearing on both motions for summary judgment, the trial court rendered judgment denying defendants' motion for summary judgment. Additionally, the trial court granted the Cathcarts' motion for summary judgment, finding:
[T]he entire 411.93 acres designated as Makinley Cove, and the individual parcels therein, are to receive the benefits of and are burdened with each and every of the "Restrictive Covenants for Makinley Cove and Adjacent Property Parcels Situated in Headright 40 and Section 28, Township 1 South, Range 10 East, Washington Parish, Louisiana," as filed and recorded at Conveyance Book 510, folio 429, Instrument No. 220674, and at Map 3, Entry 37 on August 14, 2000, located in the Office of Conveyances, Washington Parish.
After finding no just reason for delay, the trial court ordered that the judgment be deemed final as to all issues addressed therein as provided by La. C.C.P. art. 1915(B)(1).
The defendants filed an appeal from the portion of the judgment granting the Cathcarts' motion for summary judgment and filed an application for supervisory writs as to the portion of the judgment denying their motion for summary judgment. By order dated April 28, 2008, this court ordered that the writ be referred to the panel assigned to hear defendants' appeal. Accordingly, we will address the merits of both the appeal and the writ application in this opinion.

DISCUSSION

Article 1915(B) Certification
The motions for partial summary judgment at issue in the instant case only involved requests for declaratory relief and did not address the Cathcarts' additional claim for a preliminary injunction. A partial judgment or partial summary judgment does not constitute a final appealable judgment. La. C.C.P. art. 1915(B)(1). However, the judgment may be certified as a final judgment "after an express determination that there is no just reason for delay." La. C.C.P. art. 1915(B)(1).
In R.J. Messinger v. Rosenblum, 04-1664 (La. 3/2/05), 894 So. 2d 1113, the Louisiana Supreme Court held that the required designation of finality, or certification, need not include nor be accompanied by explicit reasons for the determination that there is "no just reason for delay" in order for an appeal to be taken from a partial judgment under La. C.C.P. art. 1915(B). However, the court emphasized that the trial court ideally should provide such reasons, and, if it does so, the standard of review of its certification is whether it abused its discretion. R.J. Messinger, 04-1664 at p. 13, 894 So. 2d at 1122. In those cases where the trial court does not provide explicit reasons, either oral or written, for its determination that there is no just reason for delay, the appellate court is required to conduct a de novo determination of whether the designation was proper. R.J. Messinger, 04-1664 at pp. 13-14, 894 So. 2d at 1122. In conducting this review, we consider the overriding inquiry of whether there is no just reason for delay, as well as other non-exclusive factors that trial courts should use in making the determination of whether certification is appropriate.[1] R.J. Messinger, 04-1464 at p. 14, 894 So. 2d at 1122-1123.
The judgment from which the defendants appeal states that there is no just reason for delay and designates the judgment as final for purposes of appeal. However, the trial court did not give any explicit reasons, either oral or written, for the designation. From our de novo review of the record, utilizing the nonexclusive factors set forth in R.J. Messinger, 04-1664 at p. 14, 894 So. 2d at 1122, we conclude that the designation was proper, and that the jurisdiction of this court has been properly invoked.

Motion for Summary Judgment
A motion for summary judgment is a procedural device used to avoid a fullscale trial when there is no genuine issue of material fact. Schwehm v. Jones, 03-0109, p. 4 (La. App. 1st Cir. 2/23/04), 872 So. 2d 1140, 1143. The motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 7 (La. 2/29/00), 755 So. 2d 226, 230-231. An appellate court reviews the district court's decision to grant or deny a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La. App. 1st Cir. 12/28/06), 951 So. 2d 307, 314.
Building restrictions, or "restrictive covenants" as they are generally known in the common law and occasionally termed in Louisiana, are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. La. C.C. art. 775; Cathcart v. Magruder, 06-0986, p. 11 (La. App. 1st Cir. 5/4/07), 960 So. 2d 1032, 1037. Building restrictions are incorporeal immovables and real rights likened to predial servitudes. La. C.C. art. 777; Blessey v. McHugh, 94-0555, p. 8 (La. App. 1st Cir. 7/27/95), 664 So. 2d 115, 119. As real rights, building restrictions are not rights that are personal to the vendor; rather, they inure to the benefit of all other property owners under a general plan of development and are real rights running with the land. Blessey, 94-0555 at p. 8, 664 So. 2d at 119.
In interpreting the restrictive covenant at issue, we are mindful of the rule that building restrictions are to be strictly construed, with any doubt as to the existence, validity, or extent of the building restriction resolved in favor of the unrestricted use of the immovable. La. C.C. art. 783; Country Club of Louisiana Property Owners Association, Inc. v. Dornier, 96-0898, p. 9 (La. App. 1st Cir. 2/14/97), 691 So. 2d 142, 147. Apart from the rule of strict interpretation, documents establishing building restrictions are subject to interpretation and enforcement as are contracts. Country Club of Louisiana Property Owners Association, Inc., 96-0898 at p. 9, 691 So. 2d at 147; see also Hidden Hills Community, Inc. v. Rogers, 03-1447, p. 4 (La. App. 3rd Cir. 3/31/04), 869 So. 2d 984, 986, writ denied, 04-1082 (La. 5/18/04), 874 So. 2d 158.
Interpretation of a contract is a determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
However, when the terms of a written contract are susceptible to more than one interpretation, or there is ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intent of the parties. Diefenthal v. Longue Vue Management Corporation, 561 So. 2d 44, 51 (La. 1990).
The document establishing the restrictive covenants at issue can be divided into three main sections. The title of the document refers to "Restrictive Covenants for MaKinley Cove and Adjacent Property Parcels Situated in Headright 40 and Section 28, Township 1 South, Range 10 East, Washington Parish, Louisiana." (Emphasis added.) The first paragraph of the document identifies the two parties to the restrictive covenants, Circle T and the Magees, who acknowledge that they are the sole owners of property located and to be "located in and adjacent to that certain lake known as MaKinley Cove, more fully shown on the attached map of John G. Cummings and Associates dated April 9, 1999." (Emphasis added.)
Paragraph two, which contains the restrictive language, outlines the parties' purpose in entering into the document as: "to assist in the safe and reasonable use of the land and lake and for the benefit of owners, family, and future owners of parcels that may be adjacent to MaKinley Cove." (Emphasis added.) Additionally, the document states that the parties to the covenant are establishing restrictive covenants and are encumbering "the parcels owned by them by subjecting them to the restrictive covenants." The document then lists nine individual restrictions. Restrictions one through four and six through nine speak generally; however, restriction number five refers to "[p]arcels adjacent to the lake and the lake" as being "designated for private use." (Emphasis added.)
The Cathcarts assert that the restrictive covenants apply to the entire, original 411.93 acre tract. In support, the Cathcarts rely on the title to the document, the map attached to the restrictive covenants, and the language in the document referring to the "parcels owned by them." However, what we find problematic in interpreting this document is the inconsistent use of "adjacent to" and "MaKinley Cove." As stated above, the covenant refers to MaKinley Cove in the title and then describes the geographic area that encompasses the entire 411.93 acre tract. However, paragraph one specifies that MaKinley Cove is a lake. Additionally, though the document refers to "parcels owned by them," the first paragraph identifies those parcels as being "located or to be located in or adjacent to the lake." Further, despite the Cathcarts' argument, the attached map does not resolve this inconsistency. The map, showing the entire 411.93 acre tract of land and large lake, was attached to and filed with the restrictive covenants. However, the reference in the document indicates that the map is attached to more fully show property parcels in and adjacent to the lake, not necessarily the entire 411.93 acres. Further, though the jurisprudence of this state has long held that survey maps attached to deeds become a part thereof and control in the event of a conflict with the property description in the deed, this rule has not been extended to apply to restrictive covenants.[2]
The phrase "adjacent to" is also used throughout the document. The phrase is used twice in unambiguously referring to property adjacent to the lake. However, the other two times, it is used in referring to property adjacent to "MaKinley Cove." If MaKinley Cove refers to the 411.93 acres, the use of "adjacent to" in the second paragraph, which outlines the purpose of the restrictive covenant as being "for the benefit of owners, family, and future owners of parcels that may be adjacent to MaKinley Cove," would have to be read beyond its commonly understood meaning of "next to or adjoining." (Emphasis added.) Otherwise, the parties to the covenant would have encumbered their property for the benefit of property owners other than themselves, i.e., those holding property adjacent or next to their combined 411.93 acres.
Accordingly, for the foregoing reasons, we find that the restrictive covenant at issue is ambiguous, and the intent of the parties as to whether the restrictive covenant is to apply to the entire 411.93 acres or to just those portions adjacent to the lake is a question of fact, which is not appropriately decided on a motion for summary judgment. Sanders v. Ashland Oil, Inc., 96-1751, pp. 6-7 (La. App. 1st Cir. 6/20/97), 696 So. 2d 1031, 1035.

CONCLUSION
For the foregoing reasons, we reverse the trial court's granting of summary judgment in favor of the Cathcarts and we remand this matter to the trial court for further proceedings consistent with this opinion. Additionally, we deny the defendants' writ application. All costs of this appeal are to be borne by the appellees, Aaron and Betty Cathcart.
REVERSED AND REMANDED; WRIT DENIED.
GAIDRY, J., dissenting.
I respectfully dissent. Although the term "MaKinley Cove" was used in several different and seemingly inconsistent ways, any ambiguity as to the property burdened by the building restrictions is properly resolved through application of the codal articles on interpretation of obligations. In my view, the interpretation of the expressed intent of the building restrictions is thus ultimately a legal issue rather than a factual issue, and resolution of the dispute by summary judgment is appropriate.
Applying the appropriate codal principles, I conclude that the restrictions were intended to apply to all parcels then owned by Circle T and the Magees within the "MaKinley Cove" development, which included the "MaKinley Cove" lake (or Lake MaKinley) itself, the property parcels immediately adjoining the lake, and all other successively contiguous parcels within the original 411.93-acre tract. See La. C.C. arts. 2048, 2049, 2050, and 2053. This interpretation best conforms to the overall nature of the restrictions, the described character of the property, and the expressed benefits of use of the lake. Finally, even though the attachment of the survey map or plat (depicting the entire tract) is not conclusive on the issue of the entire tract being subject to the restrictions, it is relevant and corroborative in resolving any ambiguity. Accordingly, I would affirm the trial court.
NOTES
[1] The non-exclusive factors listed in R.J. Messinger include:

(1) The relationship between the adjudicated and unadjudicated claims;
(2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
(3) The possibility that the reviewing court might be obligated to consider the same issue a second time; and
(4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
R.J. Messinger, 04-1664 at p. 14, 894 So. 2d at 1122.
[2] Additionally, we do not find that this court's opinion in Cathcart v. Magruder, 06-0986 (La. App. 1st Cir. 5/4/07), 960 So. 2d 1032, is determinative of this issue. In that case, this court stated in dicta in a footnote that the record reflected "MaKinley Cove" was used interchangeably to refer to the lake, properties adjoining the lake, and the entire 411.93 acre tract, but that for convenience, it would use "MaKinley Cove" in the opinion to refer to the entire 411.93 acres. Cathcart, 06-0986 at p. 3 n.l, 960 So. 2d at 1033-1034, n.l. This clearly falls short of a legal determination of this issue, and we find the Cathcarts' argument on this issue to be without merit.